ACCEPTED
05-14-01392-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
4/8/2015 6:56:26 PM
LISA MATZ
CLERK

**No. 05-14-01392-CV**

---

**In the Court of Appeals for the Fifth Judicial District of Texas at Dallas**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
4/8/2015 6:56:26 PM
LISA MATZ
Clerk

---

**K.W. MINISTRIES, INC.,**

**Plaintiff-Appellant,**

**v.**

**AUCTION CREDIT ENTERPRISES, LLC,**

**Defendant-Appellee**

---

**On appeal from the 116th Judicial District Court for Dallas County, Texas
Hon. Tonya Parker presiding**

---

**BRIEF OF APPELLEE
AUCTION CREDIT ENTERPRISES, LLC**

---

Robert K. Wise
State Bar No. 21812700
bwise@lwsattorneys.com
**LILLARD WISE SZYGENDA PLLC**
5949 Sherry Lane, Suite 1255
Dallas, Texas 75225
214 • 739 • 2000  Telephone
214 • 739 • 2010  Fax

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................1

INDEX OF AUTHORITIES.....................................................................................3

STATEMENT OF THE CASE...................................................................................7

STATEMENT REGARDING ORAL ARGUMENT .............................................8

STATEMENT OF FACTS .........................................................................................9

A.     The Parties. ..................................................................................................10

B.     KWM And ACE Enter Into A Floor-Plan Financing Agreement.................13

C.     KWM Defaults Under The Agreement. .........................................................16

D.     ACE Reports KWM's Default To Auction Insurance Agency (AIA)...........17

E.     KWM Sues ACE.............................................................................................19

F.     KWM Sues ACE Again...................................................................................19

SUMMARY OF ARGUMENT ................................................................................30

ARGUMENT ............................................................................................................32

A.     The Trial Court Did Not Abuse Its Discretion In Failing To
       Consider The Amended Response...................................................................32

       1.     The standard of review. .......................................................................32

       2.     The trial court did not abuse its discretion by not considering
              the Amended Response. .......................................................................32

              a.     Texas Rule of Civil Procedure 166a(c) expressly
                     requires leave of court to file a summary-judgment
                     response or summary-judgment evidence late.........................33

              b.     The relation-back doctrine is inapplicable to a
                     summary-judgment response. .................................................38

B.     The Summary Judgment Must Be Affirmed For Multiple Reasons. ............40

1.    The summary-judgment standard..........................................................40

2.    Both the no-evidence and traditional summary judgment
      must be affirmed..............................................................................42

PRAYER ...................................................................................................47

CERTIFICATE OF COMPLIANCE WITH RULE 9.4...........................................49

CERTIFICATE OF SERVICE ..........................................................................49

# INDEX OF AUTHORITIES

## CASES

*Allison v. Post-Newsweek Stations Houston LP*, Nos. 01-10-00775-CV,
01-11-00767-CV, 2011 Tex. App. LEXIS 10158 (Tex. App.—
Houston [1st Dist.] Dec. 22, 2011, no pet.) (mem. op.) ................................36

*Arellano v. Magana*, 315 S.W.3d 576 (Tex. App.—El Paso 2010) ........................47

*Baylor Health Care System v. Maxtech Hldgs., Inc.*, 111 S.W.3d 654
(Tex. App.—Dallas 2003, no pet.) ..................................................................47

*Benchmark Bank v. Crowder*, 919 S.W.2d 657 (Tex. 1996) ........................... 28, 34

*Brown v. Melissa 121/5 Partners, Ltd.*, No. 05-13-01189-CV,
2014 Tex. App. LEXIS 8467 (Tex. App.—Dallas Aug. 4,
2014, no pet.) (mem. op.) ................................................................ 32, 34, 37

*Brown v. Tex. Bd. of Nurse Exam'rs*, 194 S.W.3d 721 (Tex. App.—
Dallas 2006, no pet.) .......................................................................................47

*Burbage v. Burbage*, 447 S.W.3d 249 (Tex. 2014) .................................................43

*Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682
(Tex. 2002) ........................................................................ 32, 33, 34, 37

*Centeq Realty, Inc. v. Siegler*, 899 S.W.3d 195 (Tex. 1995) ..................................41

*Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801 (Tex. 1999) .........................................40

*Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167 (Tex. 2003)...............40

*Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720 (Tex. App
El Paso 2011, no pet.) ......................................................................................37

*Helitrans Co. v. Rotorcraft Leasing Co.* 2015 Tex. App. LEXIS 1410
(Tex. App.—Houston [1st Dist.] Feb. 12, 2015, no pet. h.)..........................46

*Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925 (Tex. 1996) ..............41

*Karcher v. Classic Foods, L.P.*, 2005 Tex. App. LEXIS 3062
(Tex. App.—Fort Worth Apr. 21, 2005, no pet.) .................................... 40, 41

*Ketter v. ESC Med. Sys., Inc.*, 169 S.W.3d 791 (Tex. App.—Dallas 2005, no pet.) ...................................................................................................41

*In re K.W. Ministries, Inc. d/b/a CRUSH Auto Sales*, No. 05-13-0085-CV, *Memorandum Op.* (Jan. 28, 2013) ...............................................................19

*Laidlaw Waste System, Inc. v. City of Wilmer*, 904 S.W.2d 656 (Tex. 1995)...........9

*Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593 (Tex. App.— Texarkana 1994, no writ)...............................................................................39

*Mackey v. Great Lakes Investments, Inc.*, 255 S.W.3d 243 (Tex. App.—San Antonio 2008, pet. denied) ...........................................................9

*Malcomson Road Utility Dist. v. Newsom*, 171 S.W.3d 257 (Tex. App.— Houston [1st Dist.] 2005, pet. denied)............................................................40

*Miller v. Argumaniz*, 2015 Tex. App. LEXIS 1274 (Tex. App.—El Paso Feb. 11, 2015, no pet. h.) (mem. op.) ...........................................................39

*PNS Stores, Inc. v. Rivera*, 335 S.W.3d 265 (Tex. App.—San Antonio 2010), *rev'd on other grounds*, 379 S.W.3d 267 (Tex. 2012)................ 35, 36

*Rhone-Poulenc, Inc. v. Steel*, 997 S.W. 2d 217 (Tex. 1999) ...................................41

*Santillan v. Nat'l Union Fire Ins. Co.*, 166 S.W.3d 823 (Tex. App.— El Paso 2005, no pet.) ...................................................................................47

*In re S.A.P.*, 156 S.W.3d 574 (Tex. 2005) .............................................................39

*Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471 (Tex. 1995)......................................41

*Sterling v. Alexander*, 99 S.W.3d 793 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) .........................................................................................47

*Swett v. At Sign, Inc.*, No. 2-08-315-CV, 2009 Tex. App. LEXIS 3579 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op.) .......................37

*Tarrant Restoration v. Tex Arlington Oaks Apts., Ltd.*, 225 S.W.3d 721 (Tex. App.—Dallas 2007, no pet.) ......................................................... 40, 41

*Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640 (Tex. 1996), *rev'd on other grounds*, 379 S.W.3d 267 (Tex. 2012) .................................35

*Univ. of Tex. Health Science Ctr. v. Bailey*, 332 S.W.3d 395 (Tex. 2011) .............39

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005)..................... 40, 41

*Wawarosky v. Fast Grp. Houston Inc.*, No. 01-13-00466-CV, 2015 Tex.
    App. LEXIS 1522 (Tex. App.—Houston [1st Dist.] Feb. 17, 2015,
    no pet. h.) (mem. op.) ...............................................................................9, 37

STATUTES AND RULES

Texas Business & Commerce Code § 17.45(5)....................................................7

Texas Business & Commerce Code § 17.46(b)....................................................7

Texas Business & Commerce Code § 17.46(b)(8), ...........................................20

Texas Business & Commerce Code §17.46(b)(12) ...........................................20

Texas Business & Commerce Code §17.46(b)(24) ...........................................20

Texas Business & Commerce Code § 17.49(f).............................................. 21, 23

Texas Business & Commerce Code § 17.50(a) .................................................23

Texas Business & Commerce Code § 17.50(a)(1) ..............................................7

Texas Business & Commerce Code § 17.50(a)(1)(A)..........................................23

Texas Business & Commerce Code § 17.50(a)(3) ..............................................7

Texas Business & Commerce Code § 17.565.................................................. 21, 23

Texas Civil Practice & Remedies Code § 16.068................................. 31, 33, 37, 39

Texas Rule of Appellate Procedure 38.1(d)........................................................9

Texas Rule of Appellate Procedure 38.1(i) .......................................................32

Texas Rule of Appellate Procedure 44.1(a) (1) ................................................37

Texas Rule of Civil Procedure 45(a) .................................................................39

Texas Rule of Civil Procedure 166a(c)................................................ 25, 31, 33, 34

Texas Rule of Civil Procedure 166a(i) ..............................................................42

**O**THER **A**UTHORITIES

Judge David Hitner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 Houston L. Rev. 1379 (2010)......................34

## STATEMENT OF THE CASE[1]

This action arises out of a "Demand Promissory Note and Security Agreement" (the Agreement) pursuant to which Appellant K.W. Ministries, Inc. (KWM) obtained floor-plan financing from Appellee Auction Credit Enterprises, LLC (ACE) for the purchase of vehicles by KWM's former used-car business.[2] KWM's "Original Petition" (the Petition) alleged five causes of action: (1) defamation, (2) false, misleading or deceptive acts or practices in violation of Sections 17.46(b) and 17.50(a)(1) of the Texas Deceptive Trade Practices Act (the DTPA),[3] (3) unconscionable actions or courses of action in violation of Sections 17.45(5) and 17.50(a)(3) of the DTPA,[4] (4) fraud, and (5) breach of contract (i.e., the Agreement).[5]

ACE moved for a no-evidence and traditional summary judgment on each cause of action and a traditional summary judgment on certain of its affirmative

---

[1] The "Clerk's Record" will be cited "CR" followed by the relevant page(s) and a parenthetical identifying the cited document (*e.g.*, CR7-13 (Pet.)). The "Reporter's Record" will be cited as "RR" followed by the relevant page(s) and line(s) (*e.g.*, "RR __:_.").

The pages of KWM's Brief are not numbered. So that ACE can refer to specific pages of it, Exhibit A hereto is a copy of the Brief on which handwritten page numbers have been written. Citations to the Brief's pages are to the interlineated ones on Exhibit A.

[2] CR5, 23 (Orig. Pet. ¶ 6 & Exh. A (the Agreement)).

[3] Tex. Bus. & Com. Code §§ 17.46(b), 17.50(a)(1).

[4] *Id*. §§ 17.45(5), 17.50(a)(3).

[5] CR7-20 (Orig. Pet.).

defenses.[6]  The Court granted the motion, entering a final summary judgment that did not specify the grounds on which it was granted.[7]  KWM timely appealed.[8]

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should *not* be granted in this appeal because the appeal is frivolous.  As discussed below, KWM's brief (the Brief or Br.) does *not* comply with Texas Rule of Appellate Procedure 38 and does not raise any appellate issues because its arguments are not clear and concise and generally fail to cite relevant legal authorities or the record.  For example, even though the trial court granted a no-evidence summary judgment, the Brief not only fails to identify the elements of each cause of action challenged by the summary-judgment motion, but, even worse, fails to identify any *specific* evidence raising a fact issue with respect to each challenged element.  The Brief also fails to mention *each* affirmative defense on which the traditional summary judgment was granted.

KWM's argument that the trial court "erred when it failed to consider [KWM's] amended [summary-judgment] response"[9] ignores the proper standard of review and is frivolous because (1) it is contrary to Texas Rule of Civil Procedure 166a(c)'s express language, and (2) is based on the relation-back doctrine—a

---

[6] CR69 (Am. MSJ).

[7] CR600 (Final Summary Judg.).

[8] CR602 (Notice of Appeal).

[9] Br. "Argument" § II, at 17.

doctrine relating to limitations and pleadings and not to summary-judgment responses.

ACE needlessly was forced to waste tens of thousands of dollars defeating KWM's meritless claims in the trial court and in preparing this brief, it should not be forced to waste thousands of dollars more on oral argument in a frivolous appeal.

## STATEMENT OF FACTS

Even though Texas Rule of Appellate Practice 38.1(d) required the Brief's "Statement of Facts" to be "supported by record references," the statement is a mere regurgitation of the Petition's "Statement of Facts" with minor modifications.[10] In fact, every "record reference" in the statement is to the Petition. As this is an appeal from a summary judgment and as pleadings are *not* proper summary-judgment evidence,[11] the Statement of Facts is unsupported by any such evidence.[12] Moreover, many of the factual assertions in the Statement of

_____

[10] *Compare* Br. Statement of Facts (6-15) *with* Pet. ¶¶ 7-20 (CR6-11).

[11] *E.g.*, *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) ("Generally, pleadings are not competent evidence, even if sworn or verified"). Although the Petition contained a number of exhibits, they also are not proper summary-judgment evidence because "[d]ocuments submitted as summary judgment proof must be sworn to or certified. 'Unauthenticated or unsworn documents, or documents not supported by any affidavit, are not entitled to consideration as summary judgment evidence.'" *Wawarosky v. Fast Grp. Houston, Inc.*, No. 01-13-0446-CV, 2015 Tex. App. LEXIS 1522 (Tex. App.—Houston [1st Dist.] Feb. 17, 2015, no pet. h.) (mem. op.) (quoting *Mackey v. Great Lakes Invests., Inc.*, 255 S.W.3d 243, 252 (Tex. App.—San Antonio 2008, pet. denied)).

[12] As discussed below, the trial court granted ACE's amended summary-judgment motion. CR69-406. KWM's original response to the motion was unaccompanied by *any*

9

Facts are not supported by citations to the Petition, presumably because the Petition does not support them.[13]

Because there is *no* summary-judgment evidence supporting KWM's version of the facts and because the material facts set forth in the Brief's "Statement of Facts" are untrue, ACE takes issue with every such fact in it and below sets forth an accurate statement of facts based on the *uncontroverted* summary-judgment evidence.

## A. The Parties.

KWM is a Texas not-for-profit corporation that purports to operate a ministry.[14] It is owned and operated by Kenneth Williams (Williams), a self-

---

summary-judgment evidence. CR407-24. Although KWM filed an amended response on the day of the summary-judgment hearing containing summary-judgment evidence, the trial court denied KWM's oral request at the hearing for leave to file it, CR600 (Final Summ. Judg.), and the Statement of Facts does not cite that evidence. In fact, that evidence is not even cited in the Brief's arguments. See Br. "Argument" §§ III-IV, at 19-21. Rather, KWM simply refers the Court to portions of the amended response. *Id.*

[13] See, e.g., Br. at 8 ("At the outset of their relationship, and at all times thereafter, Defendant instructed Plaintiff to make payment checks payable to "AAA" and not to [ACE]. Not knowing the reason or justification for this request, Plaintiff nonetheless complied with Defendant's instructions."), 10 ("On November 17, 2011, Defendant finally provided Plaintiff with a copy of the Contract. Over three (3) months had passed from the time the Contract was signed until Defendant finally gave Plaintiff a copy of the Contract."), 14 ("Defendant confirmed this balance due by handing the written statement of its Chief Operating Officer, Tedd Martin to Plaintiff in a meeting on December 22, 2011."), 15 ("Defendant finally paid Plaintiff its over-collection on proceeds of collateral in early May, 2012, almost six (6) months after it terminated its loan relationship with Plaintiff, four and one half (4½) months from the date of its last meeting with Plaintiff and over three and one half (3½) months after its last sale of any vehicles.").

[14] CR150 (Am. MSJ at 82 (Williams Depo. at 7)).

10

proclaimed minister.[15]  KWM, during its more than six years in existence,[16] has *never* filed a federal-income tax return and maintains *no* contemporaneous accounting or financial records for any of its businesses and does not even maintain copies of all of its bank statements.[17]

In addition to its "ministry," KWM currently is in the home-remodeling business and formerly was in the used-car business.[18]  The latter business, which is the subject of this action, operated under the name "C.R.U.S.H. Auto Sales."[19]

KWM began selling used vehicles in May 2010[20] at a used-car lot located on East Lancaster in Fort Worth, Texas.[21]  In or about December 2011, it moved its used-car lot to a location on South East Loop 820 in Fort Worth after learning that the person from whom it was leasing the East Lancaster location did not own it and

---

[15] The exact nature of KWM's ministry is unclear.  CR150-51 (Am. MSJ at 82-83 (Williams Depo. at 7-8)).  It is, however, clear that Williams, KWM's guiding force, has a checkered past with jobs running the gambit from mechanic to day-care owner to home-remodeling franchisee to pastor and has had run-ins both with the law and his creditors.  CR163-67 (Am. MSJ at 95-99 (Williams Depo. at 23-25, 88-90, 95-99)).

[16] CR152 (Am. MSJ 84 (Williams Depo. at 9)).

[17] CR172-74 (Am. MSJ at 104-106 (Williams Depo. at 108-10)).

[18] CR184-55 (Am. MSJ at 86-87 (Williams Depo. at 14-15)).

[19] CR153-54, 159 (Am. MSJ at 85-86, 91 (Williams Depo. at 13-14, 26)).

[20] CR212, 159 (Am. MSJ at 144 (Sewell Depo. at 22), 91 (Williams Depo. at 26)).

[21] CR213 (Am. MSJ at 145 (Sewell Depo. at 26)).

that it was not zoned for use as a used-car lot.[22] KWM's small inventory of used vehicles was purchased at used-car and salvage auctions.[23]

ACE provides, among other things, floor-plan financing for used car dealers.[24] Floor-plan financing provides a car dealer with a revolving credit line to finance vehicle purchases.[25]

ACE's typical floor-plan financing plan provides for a 56-day "Advance" (or loan) for the vehicle's purchase price. An Advance generally must be paid the earlier of when it is due or immediately upon the vehicle's sale, together with a floor-plan fee, interest, and a dealer-reserve fee.[26] If the vehicle does not sell within the Advance's 56-day term, ACE, in the exercise of its sole discretion and upon the dealer's request, can make an "Extension" on the Advance for another 28

---

[22] CR213-15 (Am. MSJ. at 145-47 (Sewell Depo. at 26-28)).

[23] CR216 (Am. MSJ at 148 (Sewell Depo. at 30)).

[24] CR280 (Am. MSJ at 212 (Valdes Aff. ¶ 2)).

[25] *Id.*

[26] CR133, 145, 280-91 (Am. MSJ at 65, 77 (Agr. § 2.3(e) and Term Sheet), 212-23 (Valdes Aff. ¶ 3)). Section 2.3(e) of the Agreement provides that "Dealer shall pay all Obligations . . . with respect to Lender-Financed Inventory on the earlier of: (a) twenty-four (24) hours from the time Dealer receives payment by or on behalf of the purchasers of an item of Lender-Financed Inventory, (b) forty-eight (48) hours after the disposition by sale or otherwise of an item of Lender-Financed Inventory, (c) the Maturity Date [of an Advance] or (d) upon demand by Lender." CR133 (Am. MSJ at 65).

The "dealer-reserve fee" is a fee charged on each Advance and is placed in a "Reserve Account." The account's purpose is to provide ACE with additional security for the dealer's performance under the Agreement. CR140, 329 (Am. MSJ at 72 (Agr. § 12.12); 261 (Valdes Supp. Aff. ¶ 4)). Any excess funds from the sale of repossessed vehicles after a dealer's default also are placed in the Reserve Account. CR329 (Am. MSJ at 261 (Valdes Supp. Aff. ¶ 4)).

12

days.[27]  When an Extension is granted, the dealer must repay at least 20 percent of the Advance's outstanding principal amount as well as interest and a floor-plan fee.[28]  Like an Advance, an Extension generally must be repaid the earlier of when it is due or immediately upon the vehicle's sale.[29]

## B.     KWM And ACE Enter Into A Floor-Plan Financing Agreement.

In August 2011, Joe Madrid (Madrid), ACE's Irving, Texas, Branch Manager, met with Williams and KWM's "general counsel," Yolonda Sewell (Sewell), about ACE's floor-plan financing program.[30]  Williams told Madrid that KWM and he had poor credit and that he wanted to upgrade KWM's used-car inventory by using floor-plan financing to purchase newer and better quality used vehicles.[31]

As required by ACE, Williams filled out a credit application.[32] Unbeknownst to ACE, the application was rife with lies.  For example, it misrepresented the amount of time in which KWM had been in the used-car

---

[27] CR281 (Am. MSJ at 213 (Valdes Aff. ¶ 4)).

[28] *Id.*

[29] CR133, 281 (Am. MSJ 65 (Agr. § 2.3(e), 213 (Valdes Aff. ¶ 4)).

[30] CR128-29 (Am. MSJ at 60-61 (Madrid Aff. ¶ 3)).

[31] *Id.*

[32] CR242-43 (Am. MSJ at 174-75 (Sewell Depo. Exh. 4 (Credit Application)).

business and its average monthly vehicle sales.[33] ACE would never have approved KWM's application had it known that any of the information on the credit application was false.[34]

Williams also told Madrid that KWM was willing to give ACE titles to certain vehicles that it owned outright as collateral for floor-plan loans.[35] ACE would not have agreed to provide floor-plan financing to KWM had KWM not agreed to do this.[36] In fact, ACE often requires dealers with poor credit histories, such as KWM, to provide such titles as collateral.[37]

On August 11, 2011, KWM signed a floor-plan financing agreement with ACE (i.e., the Agreement),[38] which provided a $75,000 floor-plan revolving credit line for vehicle purchases.[39] The Agreement was signed at ACE's Irving, Texas, office by Williams. Because Williams *always* has Sewell review KWM's

---

[33] Williams represented in the application that that KWM had been a dealer for "2+" years and that it had been operating at the East Lancaster location for that period of time, when, in fact, KWM had began operating only for about *fifteen* months. CR242, 183-84 (Am. MSJ at 174 (Sewell Depo. Exh. 4), 115-16 (Williams Depo. at 141-42)). Worse, he represented in the application that KWM averaged *fifteen* vehicle sales per month, when it had *never* sold more than *thirteen* vehicles in a month and only averaged *six* sales per month. CR312 (Am. MSJ at 244 (Reynolds Aff. Exh. C)).

[34] CR326 (Am. MSJ at 258 (Supp. Madrid Aff. ¶ 5)).

[35] CR128-29 (Am. MSJ at 60-61 (Madrid Aff. ¶ 3)).

[36] CR129, 333-34 (Am. MSJ at 61 (Madrid Aff. ¶ 4); 265-66 (Supp. Valdes Aff. ¶ 21)).

[37] CR129, 333-34 (Am. MSJ at 61 (Madrid Aff. ¶ 4); 265-66 (Supp. Valdes Aff. ¶ 21)).

[38] CR128, 133-45 (Am. MSJ at 60, 65-77 (Madrid Aff. ¶ 2 & Exh. A)).

[39] *Id.*; *see also* CR281-82 (Am. MSJ at 212-13 (Valdes Aff. ¶ 3)).

contracts before he signs them, he brought Sewell with him to ACE's office.[40]

Curiously, however, Sewell reviewed only part of the Agreement before Williams signed it.[41] And, Williams, who claimed that he had questions about certain of its provisions, including its provisions regarding Extensions, never bothered to discuss them with Sewell, Madrid, or any other ACE employee before signing the Agreement.[42]

Under the Agreement, the decision whether to make an Advance to KWM for the purchase of a vehicle, as well as the decision to make an Extension, was within ACE's *sole* discretion.[43] Likewise, KWM had no obligation to finance its used-car purchases through ACE.[44] Under the Agreement, ACE also had the right, for any or no reason, to call all of KWM's "Obligations" (i.e., outstanding Advances and Extensions) at any time (i.e., on "demand").[45] To ensure the full and

---

[40] CR168-69, 220-21 (Am. MSJ at 100-01 (Williams Depo. at 72-73), 152-53 (Sewell Depo. at 40-41)).

[41] CR168-69, 221-22 (Am. MSJ at 100-01 (Williams Depo. at 72-73), 153-54 (Sewell Depo. at 41-42)).

[42] CR169-70 (Am. MSJ at 101-02 (Williams Depo. at 73-74)).

[43] *See* CR133 (Am. MSJ at 65 (Agr. §§ 2.3(a) ("The decision to make an Advance to Dealer is *the exclusive right of Lender*, and Dealer understands and agrees that *Lender may refuse to make an Advance at any time*, with or without cause and without prior notice to Dealer . . . ." (emphasis added)), 2.3(f) ("If Dealer is in compliance with all other provisions of this Agreement, Lender may, *in its sole discretion*, permit an Extension of the Maturity Date relative to an item of Lender-Financed Inventory . . . ." (emphasis added))).

[44] CR133 (Am. MSJ (Agr. §§ 2.3(a) and 2.3(f))).

[45] CR133 (Am. MSJ (Agr. § 2.3(e))).

prompt payment of Advances and Extensions under the Agreement, KWM gave ACE a security interest in, among other things, *all* of its vehicles and other property, and not merely in those vehicles financed by ACE.[46]

## C.    KWM Defaults Under The Agreement.

Shortly after entering into the Agreement, the parties' relationship soured because (1) KWM's checks began bouncing, (2) KWM sold vehicles "out-of-trust" (i.e., selling vehicles without immediately repaying the Advance or Extension relating to it), and (3) KWM failed to repay Advances at all.[47]  On November 16, 2011, as permitted by the Agreement, ACE demanded full payment of all outstanding amounts due and owing under the Agreement (i.e., all Advances and Extensions) and further advised KWM that it would no longer make Advances or Extensions to KWM.[48]   ACE also repossessed a number of vehicles whose titles were in its possession.   It, however, refrained from immediately selling those

---

[46] CR133-34 (Am. MSJ at 66-67 (Agr. § 3.1)).

[47] CR129-30, 246, 247, 255, 275-79 (Am. MSJ at 61-62 (Madrid Aff. ¶¶ 8-9), 178 (Sewell Depo. Exh. 11 (November 8, 2011 Madrid email asking when KWM would pay past due on Advances), 179 (Sewell Depo. Exh. 12 (November 15, 2011 Madrid email noting that KWM was past due on six Advances)), 187 (Sewell Depo. Exh. 19 (November 18, 2011 Madrid letter noting that KWM had sold six vehicles out-of-trust)), 207-11 (Sewell Depo. Exhs. 28-29 (NSF checks in the amounts of $9,940 and $6,780))).

[48] CR248-50 (Am. MSJ at 180-82 (Sewell Depo. Exh. 13 (11/21/11 Williams letter))). ACE properly demanded full payment of KWM's indebtedness and properly declined to make future Advances or Extensions because the decision to make Advances or Extensions was solely in ACE's discretion, *see* CR133 (Am. MSJ at 65 (Agr. §§ 2.1, 2.3(f))), and because the Advances were demand loans, *id.* (Agr. § 2.3(e) (requiring KWM to pay all "Obligations" on "demand")).

16

vehicles at auction because KWM repeatedly promised to repay its indebtedness under the Agreement promptly.[49] After KWM failed to honor its promises, ACE sold five of the vehicles through independent and well-attended automobile auctions and applied the sales proceeds to KWM's indebtedness under the Agreement, all as permitted by the Agreement.[50] ACE then refunded $4,723 to KWM, which was the balance of KWM's Reserve Account.[51]

## D.  ACE Reports KWM's Default To Auction Insurance Agency (AIA).

AIA is an insurer that, among other things, insures automobile auctions against NSF checks and other payment defaults by dealers who purchase vehicles at their auctions.[52] It is affiliated with AutoTec LLC and AuctionACCESS, a dealer registration system that provides memberships to car dealers, which, in turn, allows the member-dealers to purchase vehicles at certain automobile auctions.[53] KWM became an AuctionACCESS member in about May 2010.[54]

On November 18, 2011, ACE informed Sam Compton (Compton), an AIA Recovery and Loss Prevention Agent, that KWM had given ACE an NSF check

---

[49] CR244-45, 251-54, 256-74 (Am. MSJ at 176-77, 183-86, 188-206 (Sewell Depo. Exhs. 10, 17, 18, 20, 21, 22, 24, 25, 26)).

[50] CR130, 138-39 (Am. MSJ at 62, 70-71 (Madrid Aff. ¶¶ 10-11, Agr. §§ 11.3, 11.9).

[51] CR282, 289-91, 330-31, 336-38 (Am. MSJ at 214, 221-23 (Valdes Aff. ¶ 8 & Exhs. C-D); 262-63, 268-70 (Supp. Valdes Aff. ¶¶ 12-13 & Exhs. A-B)).

[52] CR292 (Am. MSJ at 224 (Compton Aff. ¶ 2)).

[53] CR294 (Am. MSJ at 226 (Dukes Aff. ¶ 2)).

[54] CR295 (Am. MSJ at 227 (Dukes Aff. ¶ 3)).

and had defaulted on its floor-plan credit line.[55] AIA subsequently informed its insured auctions that no further coverage would be provided under its insurance policies with respect to KWM's checks for the purchase of vehicles at their auctions.[56]

Compton contacted Williams on November 22, 2011, to inform him about ACE's report. He also told Williams how KWM could have its checks once again covered by AIA's insurance policies, which, in turn, would have allowed it to purchase vehicles at certain auctions.[57] Williams was uninterested in having KWM reinstated by AIA.[58]

Later in November 2011, KWM allegedly was told by an auction that it could not purchase vehicles at auction because of ACE's report to AIA.[59] Thereafter, KWM never again attempted to buy vehicles at an auction[60] or made any effort to be reinstated by AIA, as Compton told Williams it could be.[61]

---

[55] CR293 (Am. MSJ at 225 (Compton Aff. ¶ 4)).

[56] *Id.*

[57] *Id.*

[58] *Id.* (Am. MSJ at 225 (Compton Aff. ¶ 5)).

[59] CR216-17, 226-28, 230-31, 189-96 (Am. MSJ at 148-49, 158-60, 162-63 (Sewell Depo. at 30-31, 146-48, 152-53), 121-28 (Williams Depo. at 199-206)).

[60] CR218-19 (Am. MSJ at 150-51 (Sewell Depo. at 32-33)).

[61] CR293 (Am. MSJ at 225 (Compton Aff. ¶ 5)).

### E. KWM Sues ACE.

On May 7, 2012, KWM sued ACE (the 2012 Action), asserting claims for the Agreement's breach, fraud, and defamation.[62] Because KWM was represented by Sewell, who was a critical fact witness regarding the Agreement's execution and KWM's dealings with ACE, ACE moved to disqualify her from acting as KWM's trial attorney in the action.[63] On October 17, 2012, the trial court granted ACE's motion and ordered KWM to obtain new trial counsel within thirty days.[64] After KWM failed to do so, the Court dismissed the 2012 Action without prejudice.[65]

### F. KWM Sues ACE Again.

On December 12, 2013, more than a year after the 2012 Action was dismissed, KWM filed this action. It asserted the same contract, fraud, and defamation claims asserted in the 2012 Action.[66] In addition, it asserted DTPA claims.[67] Specifically, KWM alleged that ACE:

---

[62] CR90 (Am. MSJ at 22).

[63] *Id.*

[64] *Id.* Notwithstanding her disqualification and this Court's denial of KWM's mandamus petition regarding it, see *In re K.W. Ministries, Inc. d/b/a CRUSH Auto Sales*, No. 05-13-0085-CV, *Memorandum Op.* (Jan. 28, 2013), Sewell is KWM's lead attorney in this appeal.

[65] CR90 (Am. MSJ at 22).

[66] CR11-18 (Pet. ¶¶ 21-51).

[67] CR18-20 (Pet. ¶¶ 52-64).

- breached the Agreement by (1) charging greater than permitted NSF-check fees, (2) requiring KWM to make payments with "certified funds" after it gave ACE two NSF checks, (3) failing to grant Extensions under the Agreement, (4) foreclosing on two vehicles after they allegedly had been sold by KWM, (5) charging for multiple lot checks, (6) repossessing vehicles that had more than "double the value" of KWM's indebtedness to ACE, (7) repossessing vehicles after KWM defaulted on the Agreement instead of exercising its rights against KWM's bond, (8) failing to return any excess proceeds from the sale of the repossessed/seized vehicles and/or KWM's reserve account to KWM after the parties' relationship ended, and (9) failing to provide an accounting;[68]

- defrauded KWM into entering into the Agreement by misrepresenting that KWM had to provide the titles to certain vehicles as collateral to obtain floor-plan financing;[69]

- defamed KWM when ACE "published a statement by oral communication and conduct to AIA asserting as fact that [KWM] did not pay its bills [*sic*] that [KWM] owed [ACE] money when it did not;"[70]

- engaged in false, misleading, and deceptive acts or practices in violation of DTPA §§ 17.46(b)(8), (12), and (24)[71] "when [ACE] informed [KWM] that relinquishment of titles to four high-end vehicles was necessary to obtain floor-plan financing" (i.e., the same alleged misrepresentation underlying the fraud claim);[72] and

- engaged in five unconscionable actions or courses of action in violation of the DTPA: (1) demanding and obtaining free and clear

---

[68] CR11-14, 314-15 (Pet. ¶¶ 21-31); Am. MSJ at 246-47 (KWM's Sec. Am. Resp. to Interrog. 2).

[69] CR14 (Pet. at ¶ 33); *see also* CR318 (Am. MSJ at 250 (KWM's Sec. Am. Resp. to Interrog. 3), 117-19 (Williams Depo. at 156-58), 161 (Sewell Depo. at 150)).

[70] CR16 (Pet. at ¶ 44).

[71] Tex. Bus. & Comm. Code §§ 17.46(b)(8), (12), (24).

[72] CR320 (Am. MSJ at 252 (KWM's Sec. Am. Resp. to Interrog. 4)).

certificates of title that were unnecessary for floor-plan financing, (2) failing to provide an accounting, (3) failing to return excess proceeds, (4) charging fees for vehicles that were never repossessed/seized by ACE, and (5) repossessing/seizing vehicles under retail-installment contracts.[73]

Even though KWM's credit line was *only* $75,000 and its relationship with ACE lasted only about *three* months during which it floor-planned *only* ten vehicles, KWM claimed that it suffered hundreds of thousands of dollars in economic damages from ACE's alleged wrongdoing.[74]

ACE's "Answer," in addition to generally denying KWM's allegations, asserted the following affirmative defenses, among others:

. . . .

5.     Plaintiff's defamation claim is barred (a) because any alleged defamatory statements were true, (b) because any alleged defamatory statements were privileged, and (c) by the one-year limitations period applicable to defamation claims,

6.     Plaintiff's DTPA claims are barred (1) because the transaction is exempt under Section 17.49(f) of the DTPA, Tex. Bus. & Comm. Code § 17.49(f), and (b) by the two-year limitations period of Section 17.565 of the DTPA,

. . . . .[75]

On July 8, 2014, ACE filed a traditional summary-judgment motion on all of KWM's claims and certain of ACE's affirmative defenses.[76] The motion was set

---

[73] CR322 (Am. MSJ at 254 (KWM's Sec. Am. Resp. to Interrog. 5)).

[74] *E.g.*, CR316 (Am. MSJ at 248 (KWM's Sec. Am. Resp. to Interrog. 2)).

[75] CR67 (Ans. at 2 (citations omitted)).

for hearing on Friday, August 8, 2014.[77] A few days before the hearing, KWM

filed a slew of motions in an effort to delay it, including motions to compel

discovery and for a continuance.[78] As a result, ACE agreed to continue the

summary-judgment hearing until Monday, September 15, 2014.[79]

ACE filed an amended summary-judgment motion on August 25, 2014 (the

Amended MSJ). It was identical to the original motion except that it also sought a

no-evidence summary judgment on each of KWM's claims.[80] Specifically, the

Amended MSJ argued the following:

✓ **The Defamation Claim**. ACE was entitled to a traditional summary
   judgment on the claim because (1) it was barred by the one-year
   limitations period for defamation claims, (2) the alleged defamatory
   statements were true, (3) the alleged defamatory statements were
   subject to a qualified privilege, and/or (4) KWM failed to mitigate its
   damages. ACE also was entitled to a no-evidence summary judgment
   on the defamation claim because there was no evidence establishing
   that KWM was damaged by the alleged defamatory statements and/or
   the dollar amount of the damages.[81]

✓ **The DTPA Claim for False, Misleading, or Deceptive Acts or
   Practices**. ACE was entitled to a traditional summary judgment on
   the claim because (1) the alleged representation (i.e., the vehicle titles
   had to be provided as security to obtain floor-plan financing) does not

---

[76] CR612, 614 (Docket Sheet at 4,6).

[77] See RR33-34; CR612, 614 (Docket Sheet at 4, 6).

[78] CR612 (Docket Sheet at 4).

[79] CR614 (Docket Sheet at 6).

[80] CR66 (Am. MSJ).

[81] CR77, 93-97, 125-26 (Am. MSJ at 9, 25-29, 57-58).

constitute a laundry-list violation as required by DTPA § 17.50(a)(1)(A),[82] (2) the representation was true—ACE would not have extended floor-plan financing to KWM without the titles, (3) the representation was not a producing cause of KWM's economic damages as KWM was able to sell the vehicles at any time even though ACE held their titles as collateral and, in any event, the Agreement gave ACE a security interest in the vehicles (and all of KWM's used-car business's other assets), (4) the claim was barred by the DTPA's two-year limitations period,[83] (5) the claim was barred by the DTPA's exemption for claims arising out of written contracts involving more than $100,000,[84] and/or (6) KWM failed to mitigate its damages. ACE also was entitled to a no-evidence summary judgment on the DTPA claim because there was no evidence establishing that (a) there was a laundry-list violation as required by DTPA §17.50(a)(1)(A), (b) the violation was a producing cause of KWM's economic damages as required by DTPA §17.50(a),[85] (c) KWM was damaged by the alleged false, misleading, or deceptive act or practice, and/or (d) the dollar amount of the DTPA damages.[86]

✓ **The DTPA Claim for Unconscionable Actions or Courses of Action**. ACE was entitled to a traditional summary judgment on the claim because (1) none of the actions underlying it constitute an unconscionable action or course of action within the DTPA's meaning, (2) the claim was barred by the DTPA's two-year limitation period, (3) the claim was barred by the DTPA's exemption for claims arising out of written contracts involving more than $100,000, and/or (4) KWM failed to mitigate its damages. ACE also was entitled to a no-evidence summary judgment on the DTPA claim because there was no evidence establishing (a) that any of the alleged wrongful acts constitute an unconscionable action or course of action within the DTPA's meaning, (b) that any of the alleged unconscionable actions or courses of action were a producing cause of KWM's economic

---

[82] Tex. Bus. & Comm. Code § 17.50(a)(1)(A).

[83] *Id.* § 17.565.

[84] *Id.* § 17.49(f).

[85] *Id.* § 17.50(a).

[86] CR77-78, 97-103, 125-26 (Am. MSJ at 9-10, 29-35, 57-58).

damages, (c) that KWM was damaged by the alleged unconscionable actions or courses of action, and/or (d) the dollar amount of KWM's DTPA damages.[87]

✓ **The Fraud Claim**. ACE was entitled to a traditional summary judgment on the claim, which was based on the same alleged misrepresentation underlying KWM's DTPA claim for false, misleading, or deceptive acts or practices (i.e., ACE's alleged representation to KWM that, to obtain floor-plan financing, KWM had to give ACE, as collateral, titles to certain vehicles that it owned outright), because (1) the representation was true—ACE would not have extended floor-plan financing to KWM without the titles, (2) KWM was not damaged by the alleged fraud as KWM was able to sell the vehicles at any time even though ACE held their titles as security and, in any event, the Agreement gave ACE a security interest in the vehicles, and/or (3) KWM failed to mitigate its damages. ACE also was entitled to a no-evidence summary judgment on the fraud claim because there is no evidence establishing (a) that the representation was false, (b) that KWM was damaged by it, and/or (c) the dollar amount of KWM's fraud damages.[88]

✓ **The Contract Claim**. ACE was entitled to a traditional summary judgment on the contract claim because (1) each of the alleged breaches either did not occur or did not violate the Agreement's provisions, and/or (2) KWM failed to mitigate its damages. ACE also was entitled to a no-evidence summary judgment on the contract claim because there was no evidence establishing (a) that ACE breached the Agreement, (b) that KWM was damaged by the alleged breaches, and/or (c) the dollar amount of the contract damages.[89]

---

[87] CR78-79, 104-10, 125-26 (Am. MSJ at 10-11, 36-42, 57-58).

[88] CR79-80, 111-13, 125-26 (Am. MSJ at 11-12, 43-45, 57-58).

[89] CR80-81, 113-26 (Am. MSJ at 11-13, 45-58).

On September 8, 2014, the last day to timely file a response to the amended summary-judgment motion,[90] KWM filed one (the Original Response).[91] The Original Response, which was unaccompanied by *any* summary-judgment evidence, addressed only one of KWM's five claims—the defamation claim, arguing that it was not barred by limitations and that the allegedly defamatory statements were not subject to a qualified privilege.[92] It also argued that ACE's summary affidavits (i.e., the Madrid, Valdes, and Reynolds affidavits) should not be considered for a number of bogus reasons.[93] Curiously, the Original Response wholly ignored ACE's request for a no-evidence summary judgment, failing to direct the trial court to any evidence creating a fact issue with respect to any of elements of KWM's claims challenged by the Amended MSJ.[94]

In addition to the Original Response, KWM, in a bad faith attempt to delay the summary-judgment hearing and its day of reckoning further, again filed

---

[90] Tex. R. Civ. P. 166a(c) (providing that a summary judgment response must be filed "not later than seven days prior to the hearing"); Br. "Argument" § II, at 17 (admitting that KWM's "response was due on or before September 8, 2015 [*sic*]").

[91] CR407 (Orig. Resp.).

[92] CR415-18 (Orig. Resp. at 9-12).

[93] CR419-23 (Orig. Resp. at 13-17). KWM also filed a motion to strike the affidavits primarily because they were undated. RR27-28. The motion, which is not in the appellate record, was denied by the trial court. CR600 (Final Summary Judg. ("the Court hereby . . . denies Plaintiff's motions")). More importantly, KWM has waived any error regarding the affidavits because the Brief does not mention them.

[94] CR407 (Orig. Resp.).

motions to compel and for continuance,[95] neither of which are part of the appellate record and only one of which, the continuance motion, was set for hearing.[96]

As evidenced from the summary-judgment hearing transcript, the motion to compel *falsely* claimed that ACE had failed to provide complete information about *other* lawsuits by its customers alleging fraud, DTPA, or defamation claims,[97] whereas the continuance motion sought a continuance of the summary-judgment hearing so that KWM could investigate the facts surrounding the other lawsuits and *not* because it needed additional time to respond to the Amended MSJ's arguments or to obtain affidavits or other evidence to support its claims or contest ACE's affirmative defenses.[98]

Perhaps most importantly, not only had KWM thoroughly questioned Madrid about the "other lawsuits" during his deposition,[99] but the trial court also recognized, and KWM's attorney even admitted, that the lawsuits were *irrelevant* to the issues raised by the Amended MSJ:

> THE COURT: . . . I did want to give you the opportunity to try to help the Court understand what the discovery is that you claim you've been diligent in trying to pursue, notwithstanding that

---

[95] See RR4-27 (discussing the motions); CR613 (Docket Sheet at 3).

[96] RR8:1-7; CR613 (Docket Sheet at 3).

[97] RR4-27.

[98] *Id.*

[99] RR16-19.

diligence you haven't gotten, and it limits your ability to respond to the motion for summary judgment.

I have to be honest with you, Mr. Leslie, I don't entirely understand the answers to all of those questions. You have told me about a lot of things that, to Mr. Wise's point and in fairness, they are not in the record that's in front of me on the motion for continuance . . . .

But even if I were to . . . consider what you have said . . ., there still is this hole in this respect, two things: One, *I still haven't heard on what issue related to this summary judgment these lawsuits . . . would provide any type of evidence that you think is relevant to your being able to respond to the motion for summary judgment;* but the second issue . . . is that as it relates to the DTPA claims, the defamation claim, the DTPA laundry list and the unconscionable conduct claims, the motions [*sic*] posit legal grounds for the Court to dispose of those claims, arguably things that *you could respond to without any additional evidence . . . . And I don't know, frankly, what evidence you would need to be able to respond to some of the legal arguments that are made.*

. . . . .

*. . . I haven't heard about anything related to these other lawsuits that these other lawsuits that has to do with your ability to respond to those legal arguments, yet you filed a response that doesn't cite any authority or attach any evidence which you have the ability to get.* Your client's affidavit. Your client is here. He has been here. He was here at the last proceeding. You have the ability to get his affidavit on different points. So you have that. *And so I don't really understand why you haven't been able to respond to both the legal arguments and even the argument of truth being a defense.*

*So tell me . . .—what these lawsuits have to do with that, those aspects of the defamation claim.*

MR. LESLIE: On the issue of limitations, Your Honor, *the lawsuits don't have anything to do with it. . . .*

. . . .

27

THE COURT: *What do the lawsuits have to do with responding to the argument about the limitations argument and the exemption arguments* [i.e., DTPA § Section 17.49(f), Tex. Bus. & Comm. Code § 17.49(f)]?

MR. LESLIE: *Nothing.*

THE COURT: *And as it relates to . . . the [DTPA] laundry list [violations], . . . the lawsuits obviously don't bear on that.*

MR. LESLIE: *No*, your honor.[100]

ACE promptly filed a reply to the Original Response debunking its minimal arguments.[101] On Friday, September 12, 2014, the last business day before the summary-judgment hearing, KWM filed a "Document Supplement" to the Original Response, which contained some unsworn and unauthenticated documents and excerpts from Williams' and Madrid's deposition transcripts.[102] The Document Supplement was unaccompanied by a motion seeking leave to file it late.[103]

---

[100] RR21:9-22:17, 23:2-18, 25:16-25 (emphasis added). The trial court denied the continuance motion, CR600 (Final Summary Judg. ("the Court hereby . . . denies Plaintiff's motions")), and, more importantly, KWM has waived any appellate issue regarding it because it is not mentioned in the Brief.

[101] CR425 (Reply Br.).

[102] CR459 (Doc. Supp.).

[103] The trial court never entered an order allowing KWM to file the Document Supplement and KWM does not complain about this failure in the Brief. Of course, absent such an order, the evidence was not properly before the trial court. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) ("There is no order in this record granting the Crowders leave to file McCool's affidavit late. McCool's affidavit was not properly before the trial court on the motions for summary judgment.").

Finally, on the morning of the hearing, KWM filed an amended summary-judgment response,[104] which was accompanied by Sewell's affidavit, which related solely to the defamation claim, some unsworn and unauthenticated documents, and excerpts from Williams', Sewell's, and Madrid's deposition transcripts[105] (collectively with the amended response, the "Amended Response"). As was the case with the Document Supplement, the Amended Response was unaccompanied by a motion seeking leave to file it. The Amended Response was received by ACE's attorneys as they were leaving for the summary-judgment hearing and was *not* received by the trial court before the hearing began.[106]

At the summary-judgment hearing, KWM's attorney asked the trial court to "receive my oral motion for leave to amend and accept our response to the summary judgment motion that was filed this morning."[107] When asked point blank by the trial court why the Amended Response had not been filed timely, KWM's attorney had no explanation:

---

[104] CR483.

[105] CR521-99.

[106] RR23:18-21 ("MR. LESLIE: . . . We filed an amended response this morning. THE COURT: I'm not aware of any amended response."), 34:21-25 ("[MR. WISE:] . . . This morning at 11:30 as Ms. Fayne and I were leaving to . . . come to court, I got an e-mail from the court system saying he filed something. My paralegal printed it out and we read it sitting out in the hallway.").

[107] RR33:8-11.

Mr. LESLIE: That is addressed in the amended response. There's the affidavit of Ms. Sewell, who has been previously identified as a fact witness in this case, with which I agreed.

The COURT: So tell me why you—Ms. Sewell has been here. She's been here before you were here. Why would I not have an affidavit to support the response when it was due versus the morning of the proceeding . . . ?

Mr. LESLIE: *I don't have a satisfactory answer for that*, Your Honor.[108]

The trial court denied KWM's oral request for leave to file the Amended Response late.[109]

## SUMMARY OF ARGUMENT

KWM first claims that the trial court "erred" in not considering the Amended Response in ruling on the Amended MSJ because (1) a trial court must consider any response and evidence on file before the summary-judgment hearing irrespective of when it was filed, and (2) under Section 16.068 of the Texas Civil Practice & Remedies Code, the Amended Response's filing related back to the filing of the timely Original Response. Both arguments are frivolous.

---

[108] RR24:3-13 (emphasis added). Later during the hearing, KWM's attorney complained that ACE filed the Amended MSJ at the last possible minute, *id*. at 30:6-16, 31:2-7, and "that's not a lot of time for us to respond to a whole new set of summary judgment arguments[,]" *id*. at 31:2-7. Nonetheless, when the trial court asked him if KWM's key witnesses, Williams and Sewell, were unavailable between the filing of the Amended MSJ and the September 8, 2014 deadline to respond to it, he candidly admitted they were available. *Id*. at 30:17-20 ("THE COURT: Is there some record in front of me that Ms. Sewell and Mr. Williams have not been available to you between the 26th of August and the 8th of September? MR. LESLIE: There is not.").

[109] CR600 (Final Summary Judg. ("the Court hereby . . . denies Plaintiff's oral request at the September 15, 2015 hearing for leave to file its amended summary judgment response")).

Texas Rule of Civil Procedure 166a(c) expressly provides that "leave of court" is required to file a summary-judgment response or summary-judgment evidence, such as the Amended Response, less than seven days before the hearing. Here, KWM never sought such leave and, even if it had, there was no good cause for its failure to timely file the Amended Response.

Section 16.068 of the Texas Civil Practice and Remedies Code, by its express terms, only applies to *pleadings* and *pleas of limitation*. A summary judgment response is neither a pleading nor relates to limitations. Accordingly, the trial court did not abuse its discretion in failing to consider the Amended Response.

KWM's second and third arguments are that the trial court erred in granting either a no-evidence or traditional summary judgment. The arguments fail for two reasons. First, as even KWM implicitly concedes, the Original Response was wholly inadequate to defeat summary judgment. Because KWM's arguments are based on the Amended Response and because the trial court did not abuse its discretion in failing to consider it, the summary judgment must be affirmed.

Second, even if the trial court abused its discretion in not considering the Amended Response, the Brief's arguments are wholly conclusory, fail to address each no-evidence and traditional summary judgment ground, fail to cite any authorities, and fail to direct the court to the summary-judgment evidence raising a fact issue on even the two claims and one defense mentioned in passing in the

31

Brief. Thus, they fail to comply with Texas Rule of Appellate Procedure 38.1(i) and are inadequate. Accordingly, the summary judgment must be affirmed.

## ARGUMENT

### A. The Trial Court Did Not Abuse Its Discretion In Failing To Consider The Amended Response.

#### 1. The standard of review.

An appellate court "reviews a trial court's ruling on a motion for leave to file a summary-judgment response or summary-judgment evidence late for an abuse of discretion."[110] A trial court "abuses its discretion when it acts without reference to any guiding rules or principles."[111]

#### 2. The trial court did not abuse its discretion by not considering the Amended Response.

KWM claims that the trial court "erred" in failing to consider the Amended Response for two reasons.[112] Initially, claiming that Texas Rule of Civil Procedure 166a(c) requires a trial court to consider any response or evidence on file at the time of the summary-judgment hearing irrespective of when it was filed, KWM concludes that the trial court was required to consider the Amended Response

---

[110] *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686 (Tex. 2002); *accord Brown v. Melissa 121/5 Partners, Ltd.*, No. 05-13-01189-CV, 2014 Tex. App. LEXIS 8467, at *3 (Tex. App.—Dallas Aug. 4, 2014, no pet.) (mem. op.).

[111] *Carpenter*, 98 S.W.3d at 687; *accord Brown*, 2014 Tex. App. LEXIS 8467, at *3.

[112] Br. "Argument" § II, at 17-19.

because it was filed on the morning of the hearing.[113] Next, it argues that, since the Original Response was timely filed, the Amended Response also was timely filed because, under Section 16.068 of the Texas Civil Practice and Remedies Code, the Amended Response's filing relates back to the Original Response's filing.[114] Both arguments are frivolous.

### a. Texas Rule of Civil Procedure 166a(c) expressly requires leave of court to file a summary-judgment response or summary-judgment evidence late.

KWM's argument that Rule 166a(c) required the trial court to consider any response or evidence filed before the summary-judgment hearing ignores the Rule's express language, which requires leave of court for the filing of a summary-judgment response or summary-judgment evidence late: "*Except on leave of court*, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."[115]

Unsurprisingly, given Rule 166a(c)'s clear language, the Texas Supreme Court and this Court repeatedly have held that the Rule requires leave of court for such late filings.[116] As recently explained by this Court:

---

[113] *Id.*

[114] *Id.* at 18-19.

[115] Tex. R. Civ. P. 166a(c) (emphasis added).

[116] *Carpenter*, 98 S.W.3d at 686 ("Our summary judgment rules afford a party in this situation an opportunity to obtain additional time to file a response, either by moving for leave to file a late response or by requesting a continuance of the summary-judgment hearing." (citing

In a summary judgment proceeding, the nonmoving party may file and serve opposing affidavits or other written responses no later than seven days prior to the scheduled date of the hearing. *The nonmoving party must obtain leave to file evidence after the deadline*. A motion for leave to file a late summary judgment response should be granted when the nonmovant establishes good cause by showing that the failure to timely respond (1) was not intentional or the result of conscious indifference but the result of accident or mistake and (2) allowing the late response will not cause any undue delay or otherwise injure the party seeking summary judgment.[117]

KWM wholly ignored the good-cause standard in the trial court. The Amended Response was unaccompanied by a motion for leave and an affidavit explaining why its late filing was not intentional or the result of conscious indifference or why it would not cause undue delay or otherwise injure ACE. And, at the summary-judgment hearing, KWM's attorney did not mention either prong of the standard.[118] Similarly, the Brief also ignores the good-cause standard.

It, however, is clear that neither prong of the standard was met here. Initially, KWM's failure to timely file the Amended Response was intentional or the result of conscious indifference as evidenced by the fact that it filed a frivolous continuance motion that *falsely* claimed that ACE had failed to provide discovery

---

Tex. R. Civ. P. 166a); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) ("Summary judgment evidence may be filed late, but only with leave of court." (citing Tex. R. Civ. P. 166a(c)); *Brown*, 2014 Tex. App. LEXIS 8467, at *3 ("The nonmoving party must obtain leave to file evidence after the deadline."); Judge David Hitner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 Houston L. Rev. 1379, 1406, 1423 (2010) (pointing out that leave of court is required to file a summary-judgment response or summary-judgment evidence late).

[117] *Brown*, 2014 Tex. App. LEXIS 8467, at *3; *accord* Carpenter, 98 S.W.3d 688.

[118] See RR29-36.

about matters—other lawsuits—that (1) KWM had *already* had full and complete discovery about, and (2) were wholly *irrelevant* to any issue raised by the Amended MSJ and, therefore, did not preclude KWM from responding to the Amended Motion fully in a timely manner.[119] Of course, a failure to file a proper continuance motion shows intent or conscious indifference.[120]

Perhaps more importantly, KWM offered no evidence about what steps, if any, it took to obtain timely the allegedly needed discovery so as to establish that it was not acting intentionally or with conscious indifference.[121] To the contrary, as its lawyer candidly admitted at the summary-judgment hearing, there was no excuse for its failure to file the Sewell Affidavit on time and it was uncontroverted that (1) KWM had unfettered access to its principal witnesses, Sewell and Williams, at all times, and (2) the documents and deposition-transcript excerpts attached to the Amended Response had been in its attorney's possession long

---

[119] See discussion *supra* notes 97-100.

[120] *See Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (holding that a nonmovant who needs additional evidence to prepare a summary-judgment response must properly request a continuance), *rev'd on other grounds*, 379 S.W.3d 267 (Tex. 2012); *PNS Stores, Inc. v. Rivera*, 335 S.W.3d 265, 284 (Tex. App.—San Antonio 2010), *rev'd on other grounds*, 379 S.W.3d 267 (Tex. 2012) (same).

[121] It was evident that KWM made no effort to obtain any evidence about the other lawsuits (or anything else) after the Madrid deposition. *E.g.*, RR16:21-18:8 (discussing the fact that ACE obtained an affidavit from one of the lawyers in one of the "other lawsuits" explaining the lawsuit's nature).

before the September 8, 2014 deadline to file a timely summary-judgment response.[122]

Not only is the first good-cause element not established, but it also is clear that had the trial court granted KWM leave to file the Amended Response late, ACE would have been greatly prejudiced. As pointed out above, the Amended Response was not filed until the *morning* of the summary-judgment hearing, was received by ACE's attorneys as they left for the hearing, and was not received by the trial court before the hearing. Thus, the granting of leave to file the Amended Response necessarily would have required the Court to postpone the summary-judgment hearing so that it could consider the response and so that ACE could reply to it. This, in turn, would have resulted in undue delay—a delay of both the summary-judgment hearing, which already had been rescheduled once because of KWM's shenanigans, and the entry of summary judgment. The granting of leave also would have caused ACE to incur considerable additional attorneys' fees

---

[122] See discussion *supra* notes 99-103, 106. See also *PNS Stores*, 335 S.W.3d at 284 ("Moreover, there is no evidence about what steps, if any, PNS took to obtain the documents before its response was due so as to establish it was not acting intentionally or with conscious indifference.); *Allison v. Post-Newsweek Stations Houston LP*, Nos. 01-10-00775-CV, 01-11-00767-CV, 2011 Tex. App. LEXIS 10158, at *12 (Tex. App.—Houston [1st Dist.] Dec. 22, 2011, no pet.) (mem. op.) ("Dorinda presented no evidence to show that her failure to respond was not intentional or the result of conscious indifference. There is only the bare assertion in her affidavit that she did not receive the notice, which is insufficient to show a lack of intent or conscious indifference. There is no evidence that the notice was delivered to an incorrect address or that Loase was unauthorized to receive mail at Dorinda's place of business. Nor is there evidence of any other accident or mistake. Accordingly, we cannot say that the trial court abused its discretion in denying Dorinda's motion for new trial to allow her to file a late response to the motion for summary judgment." (citation omitted)).

because all the time spent preparing for the summary-judgment hearing on September 15, 2014, would have been wasted and ACE would have been forced to spend thousands of dollars more in attorneys' fees preparing a second reply brief (it had already replied to the original response) and preparing for another summary-judgment hearing.

In *Brown v. Melissa 121/5 Partners, Ltd.*, this Court recently held, on similar facts, that there was sufficient prejudice to negate the second good-cause element:

> [E]ven assuming his unverified arguments established the first *Carpenter* element, appellant failed to show the late response would not cause any undue delay or otherwise injure appellee. In fact, the motion does not even mention the possibility of delay if the court granted the motion for leave. Appellee, however, specifically argued in its response that it would be prejudiced by a delay because it would delay entry of judgment and cause increased legal fees. Thus, we conclude appellant wholly failed to establish the second *Carpenter* element-that allowing the late response would not unduly delay or otherwise injure appellee. As such, appellant failed to establish good cause for not timely filing her motion for summary judgment response.[123]

Finally, it is worth noting that an appellant, such as KWM, who complains on appeal about the exclusion of summary-judgment evidence, must not only establish that the trial court abused its discretion in excluding the evidence, but

---

[123] 2014 Tex. App. LEXIS 8467, at *3-5 (citation omitted); *accord Swett v. At Sign, Inc.*, No. 2-08-315-CV, 2009 Tex. App. LEXIS 3579, at *5-6 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op.) (holding that the trial court's denial of leave to file a late summary-judgment response was not an abuse of discretion when neither the unsworn motion nor the attached affidavits discussed the possibility of delay if leave were granted).

also that the evidence's exclusion probably caused the rendition of an improper judgment.[124] Here, KWM merely claims that the trial court "erred" in not considering the Amended Response. Nothing in the Brief, however, explains how the exclusion of its late-filed summary-judgment evidence probably resulted in an improper summary judgment (i.e., why it created a fact issue on any of KWM's claims or on ACE's affirmative defenses). Indeed, the Brief is wholly devoid of any citation or reference to that evidence. Simply put, KWM has failed to establish that the trial court's failure to consider the Amended Response constitutes reversible error.

> **b.** **The relation-back doctrine is inapplicable to a summary-judgment response.**

KWM's second argument—that the Amended Response, under Section 16.068 of the Texas Civil Practice and Remedies Code, related back to the filing of the Original Response—is absurd. Initially, as pointed out above, Texas Rule of Civil Procedure 166a(c) expressly requires "leave of court" for the filing of a summary-judgment response or summary-judgment evidence late.

---

[124] *Wawarosky v. Fast Grp. Houston Inc.*, N0. 01-13-00466-CV, 2015 Tex. App. LEXIS 1522, at *10 (Tex. App.—Houston [1st Dist.] Feb. 17, 2015, no pet. h.) (mem. op.) ("To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment."); *Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 723 (Tex. App—El Paso 2011, no pet.) ("A party complaining on appeal of the admission or exclusion of evidence must show both that the trial court's ruling was erroneous and probably caused rendition of an improper judgment."); Tex. R. App. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment . . . .").

Moreover, Section 16.068, by its express terms, only applies to *pleadings* and *pleas of limitation*:

> If a filed *pleading* relates to a cause of action, cross action, counterclaim, or defense that is not subject to a *plea of limitation* when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a *plea of limitation* unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.[125]

A summary-judgment response is *not* a "pleading"[126] and does not concern a "plea of limitation." In fact, the Texas Supreme Court has made clear that the relation-back doctrine relates only to limitations defenses: "But narrow or broad, the purpose of the relation-back doctrine is to determine not *when*, but *on what* limitations runs."[127]

In sum, the trial court did not abuse its discretion in refusing to consider the Amended Response.

---

[125] Tex. Civ. Prac. & Rem. Code § 16.068 (emphasis added).

[126] *See In re S.A.P.*, 156 S.W.3d 574, 576 n.3 (Tex. 2005) ("[A] motion for summary judgment is not a pleading."); *Miller v. Argumaniz*, 2015 Tex. App. LEXIS 1274, at *5 (Tex. App.—El Paso Feb. 11, 2015, no pet. h.) (mem. op.) (same); Tex. R. Civ. P. 45(a) ("Pleadings in the district and county courts shall (a) be by petition and answer . . . .").

[127] *Univ. of Tex. Health Science Ctr. v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011); *see Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 601 (Tex. App.—Texarkana 1994, no writ) ("When an *amended pleading* sets up a new cause of action under Section 16.068, it will relate back to the date of the original pleading *for the purposes of limitations*, so long as the amended pleading does not allege a wholly new, distinct, or different transaction." (emphasis added)).

**B.     The Summary Judgment Must Be Affirmed For Multiple Reasons.**

**1.     The summary-judgment standard.**

An appellate court reviews a summary judgment de novo.[128] The standards for reviewing no-evidence and traditional summary judgments are well established.

A no-evidence summary judgment is proper if there is no evidence regarding one or more elements of a cause of action.[129] The trial court must grant the motion unless the nonmovant produces "more than a scintilla of evidence [that] raises a genuine issue of material fact" on the challenged elements.[130] "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact."[131]

A defendant is entitled to a traditional summary judgment if the evidence establishes, as a matter of law, either that at least one element of the plaintiff's cause of action cannot be established[132] or that each element of an affirmative

---

[128] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Tarrant Restoration v. Tex. Arlington Oaks Apts., Ltd.*, 225 S.W.3d 721, 727 (Tex. App.—Dallas 2007, no pet.).

[129] *Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 262 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

[130] *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Malcomson*, 171 S.W.3d at 262.

[131] *Forbes*, 124 S.W.3d at 172; *Malcomson*, 171 S.W.3d at 262.

[132] *Karcher v. Classic Foods, L.P.*, 2005 Tex. App. LEXIS 3062, at *3 (Tex. App.—Fort Worth Apr. 21, 2005, no pet.); *accord Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999).

defense has been established.[133]  Once the defendant produces sufficient evidence to establish its right to summary judgment, "the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant."[134]  And, "[w]hen reviewing a summary judgment, [the appellate court] accept[s] all evidence favorable to the nonmovant as true, indulge[s] the nonmovant with every favorable reasonable inference, and resolve[s] any doubt in the nonmovant's favor. The appellate court must affirm the summary judgment if any one of the movant's theories has merit."[135]

Finally, when, as here, "the trial court's summary judgment does not specify the basis for the ruling, [the appellate court] must affirm the judgment if any of the summary judgment grounds are meritorious. When the appeal does not challenge one of the grounds for summary judgment, the judgment may be affirmed on that ground alone."[136]

---

[133] *Rhone-Poulenc, Inc. v. Steel*, 997 S.W. 2d 217, 224 (Tex. 1999); *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996).

[134] *Karcher*, 2005 Tex. App. LEXIS 3062, at *3; *accord Centeq Realty, Inc. v. Siegler*, 899 S.W.3d 195, 197 (Tex. 1995).

[135] *Valence Operating*, 164 S.W.3d at 661; *Tarrant Restoration*, 225 S.W.3d at 727.

[136] *Ketter v. ESC Med. Sys., Inc.*, 169 S.W.3d 791, 797 (Tex. App.—Dallas 2005, no pet.) (citation omitted); *accord Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## 2. Both the no-evidence and traditional summary judgment must be affirmed.

The summary judgment must be affirmed for multiple reasons. *First*, as KWM implicitly concedes, the Original Response was wholly inadequate to defeat summary judgment because it failed to address the no-evidence grounds for summary judgment, wholly failed to contain legal authorities, only partially addressed only the defamation claim and then only with respect to the traditional summary-judgment motion, and cited *no* summary-judgment evidence because it was *unaccompanied* by any such evidence.[137] Because the trial court did not abuse its discretion in denying KWM leave to file the Amended Response and because the Original Response was wholly deficient, both the no-evidence and traditional summary judgment were properly granted.[138]

*Second*, even if the trial court abused its discretion in not considering the Amended Response, which it did not, the Brief is so inadequate that it does not raise an appellate issue regarding either the no-evidence or traditional summary judgment.

---

[137] The Brief does not argue that the Original Response raised a fact issue with respect to ACE's traditional summary-judgment motion on the defamation claim. Rather, it baldly alleges that the Amended Response raised fact issues with respect to certain claims. Br. "Argument" §§ III, at 20 ("The facts and law outlined in the *amended response* amount to more than a scintilla of evidence . . . ." (emphasis added)), IV, at 21 ([T]he *amended response* brings to light both genuine issues of material fact as well as defeats the affirmative defense claimed by [ACE]." (emphasis added)).

[138] Tex. R. Civ. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.").

42

For example, the sum and substance of its argument regarding the no-evidence summary judgment is that KWM

> offered evidence to show that [ACE] breached the agreement by charging excessive insufficient fund fees, by requiring certified funds, by declining curtailments or extensions, by repossessing vehicles under retail installment contract [*sic*], by charging for multiple lot checks, by selling collateral for less than commercially reasonable values, by failing to proceed against the bond, by failing to timely return excess proceeds, and by failing to provide an accounting. Similarly, [KWM] provided evidence that [ACE] was not entitled to a qualified privilege on the defamation claim. Further, [KWM] introduced evidence of [ACE's] unconscionable actions as it relates to the [DTPA].[139]

Each assertion is supported only by citations to the Amended Response and *not* by any summary-judgment evidence (either ACE's or that in the Amended Response).[140] Moreover, the Brief wholly fails to mention the defamation claim, the fraud claim, or the DTPA claim for false, deceptive, or misleading acts or practices, much less explain why a fact issue exists on any of the challenged elements of those claims. Further, even though the Amended Motion sought a no-evidence summary judgment with respect to each of KWM's claims on the grounds that there was no evidence that KWM had been damaged by the alleged

---

[139] Br. "Argument" § III, at 19-20 (footnotes omitted). Because "a qualified privilege" is an affirmative defense, *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (noting that qualified privilege "operates as an affirmative defense in the nature of confession and avoidance"), ACE sought a traditional, and not a no-evidence summary judgment, on it. CR96-97 (Am. MSJ at 28-29).

[140] Br. "Argument" §§ III-IV, at 19-21.

wrongdoing or, if had been damaged, the dollar amount of its damages,[141] the Brief

fails to mention this fact, much less (1) explain, for each cause of action, how

KWM was damaged and the amount of its damages, or (2) cite any evidence

establishing the damages or their amounts.[142] Finally, even with respect to the two

causes of action actually referenced in the Brief—the contract claim and the DTPA

claim for unconscionable actions and courses of action—the Brief is woefully

deficient.

For example, with respect the contract claim, the Brief not only fails to cite a

single provision of the Agreement that required or prohibited the alleged breaching

conduct, but more importantly fails to cite any evidence establishing that the

alleged breaching conduct occurred.[143] The Brief's treatment of the DTPA claim

---

[141] See discussion *supra* notes 80-88.

[142] Br. "Argument" § III, at 19-20.

[143] *Id*. The frivolity of KWM's contract claims is easily demonstrated. For example, one of the alleged Agreement breaches is ACE's failure to allow Extensions even though, under the Agreement, ACE had *absolute discretion* to decline to make them. CR133 (Madrid Aff. Exh. A (Agr. § 2.3(f) ("If Dealer is in compliance with all other provisions of this Agreement, Lender may, *in its sole discretion*, permit an Extension of the Maturity Date relative to an item of Lender-Financed Inventory . . . ." (emphasis added))). Thus, ACE had no obligation to grant KWM *any* Extension. And, when it refused to grant them, it did so only after KWM had breached the Agreement by providing NSF checks, by selling vehicles out-of-trust, by not paying Advances at all, and by not immediately repaying its indebtedness under the Agreement in full after ACE demanded that it do so on November 16, 2011. CR280-81 (Valdes Aff. ¶ 3).

Another of the alleged breaches is ACE's repossessing and selling at auction vehicles after KWM defaulted on the Agreement instead of "proceed[ing] against [KWM's] bond." Section 11 of Agreement not only provided ACE with many remedies in the event of a default (e.g., including repossession and sale of KWM's vehicles), but also provided that ACE "may, at its option and without notice exercise *any and all* of its rights in a separate, successive or concurrent fashion and such exercise of any right shall not preclude pursuit of other rights and

for unconscionable acts or courses of action is similarly deficient. Thus, none of the five allegedly unconscionable actions or courses of action are mentioned, no cases are cited in support of KWM's contention that each, in fact, constitutes an unconscionable action or course of action, and the Brief wholly fails to explain how each was a producing cause of KWM's damages.[144]

The sum and substance of the Brief's argument regarding the traditional summary judgment is equally sparse and inadequate: "As stated in argument section three, the amended response brings to light genuine issues of material fact as well as the affirmative defense claimed by [ACE]. Namely, [ACE] charged excessive insufficient fund fees, was not legally entitled to a claim of qualified privilege, and committed unconscionable actions . . . ."[145]

---

remedies at a later time." CR138 (Madrid Aff. Exh. 1A (Agr. § 11.1 (emphasis added)). Although proceeding against KWM's bond was one potential remedy for KWM's default, ACE had *no* obligation to proceed against it. Accordingly, it did not breach the Agreement by failing to do so.

A third alleged breach is ACE's alleged failure to provide an accounting. Nothing in the Agreement, however, specifically (or the law generally) required an accounting, CR133-45 (Madrid Aff. Exh. 1A (Agr.), and ACE effectively provided one when it met with Williams and another KWM employee, Fred Darden, on December 22, 2011, and explained the collection/repossession fees charged to KWM and the unpaid balance owed under the Agreement for Advances/Extensions. CR131 (Madrid Aff. ¶ 13); CR326 (Supp. Madrid Aff. ¶ 3).

[144] Br. "Argument" § III, at 19-20.

[145] *Id*. "Argument" § IV, at 21.

Not a single legal authority is cited regarding the two claims and one defense mentioned in passing.[146] Even worse, the Brief (1) wholly *ignores* the defamation, fraud, and DTPA claims for false, misleading, and deceptive acts or practices, (2) wholly *ignores* the affirmative defenses to the defamation claim on which ACE sought summary judgment other than the qualified-privileged defense, (3) wholly *ignores* all the affirmative defenses to the DTPA claims on which ACE sought summary judgment, (4) wholly *ignores* the fact that a traditional summary judgment was sought on each claim on the grounds that the evidence established that KWM had not been damaged by the alleged wrongdoing, and (5) wholly *fails* to direct this Court to *any* evidence in the record on the two claims and one defense mentioned in the Brief in passing—the contract claim, the DTPA claim for unconscionable actions or courses of action, and qualified privilege.[147]

> As recently held by the Houston (First District) Court of Appeals:

> An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." A party asserting error on appeal bears the burden of showing that the record supports the contention raised and of specifying the place in the record where matters upon which it relies or of which it complains are shown. [An appellate court is] not required to sift through a voluminous record without guidance from the appellant to determine whether an assertion of error is valid.[148]

---

[146] *Id*. "Argument" § IV, at 20-21.

[147] *Id*.

[148] *Helitrans Co. v. Rotorcraft Leasing Co.* 2015 Tex. App. LEXIS 1410, at *8 (Tex. App.—Houston [1st Dist.] Feb. 12, 2015, no pet. h.) (quoting Tex. R. App. P. 38.1(i)) (citations

46

Because the Brief's arguments regarding the summary judgment are conclusory, fail to address each no-evidence and traditional summary judgment ground, fail to cite any authorities, and fail to direct the court to any specific summary-judgment evidence raising a fact issue on even the two claims and one defense mentioned in passing, they are inadequate and the summary judgment must be affirmed.[149]

## **PRAYER**

For the foregoing reasons the summary judgment should be affirmed.

---

omitted); *accord Arellano v. Magana*, 315 S.W.3d 576, 577-578 (Tex. App.—El Paso 2010, no pet.); *Baylor Health Care Sys. v. Maxtech Hldgs., Inc.*, 111 S.W.3d 654, 657 (Tex. App.—Dallas 2003, no pet.).

[149] *Arellano*, 315 S.W.3d at 577-578 ("Here, Appellants' first issue merely consists of a few conclusory statements . . . . Although they attack the credibility of Appellees' attorney, they fail to discuss why the evidence supporting the verdict is insufficient. Moreover, Appellants' second and third issues merely recite the issues stated without providing any discussion, argument, authority, or substantive analysis. Accordingly, we find Appellants inadequately briefed their complaints and overrule the same."); *Brown v. Tex. Bd. of Nurse Exam'rs*, 194 S.W.3d 721, 723 (Tex. App.—Dallas 2006, no pet.) ("Brown does not cite any authority or offer a clear and concise argument to support her contention that she has a constitutional due process right to bill of review, and that the vexatious litigant statute violates that right. . . . We conclude the issue is inadequately briefed and presents nothing for review."); *Santillan v. Nat'l Union Fire Ins. Co.*, 166 S.W.3d 823, 824 (Tex. App.—El Paso 2005, no pet.) (issue inadequately briefed where appellant merely uttered conclusory sentences); *Sterling v. Alexander*, 99 S.W.3d 793, 799 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (issue inadequately briefed when appellant failed to make a cogent argument).

Respectfully submitted,

**LILLARD WISE SZYGENDA PLLC**

By: /s/ *Robert K. Wise*
   Robert K. Wise
   State Bar No. 21812700
   bwise@lwsattorneys.com

5949 Sherry Lane, Suite 1255
Dallas, Texas 75225
214 • 739 • 2000  Telephone
214 • 739 • 2010  Fax

**ATTORNEYS FOR APPELLEE
AUCTION CREDIT ENTERPRISES,
LLC**

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

This brief complies with the limitations of Tex. R. App. P. 9.4(i)(2)(B) because it contains 11,047 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1), and it complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it was prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 pt. font for text and 12 pt. font for the footnotes.

Dated: April 8, 2015

/s/ *Robert K. Wise*
Robert K. Wise,
Attorney for Appellee

## CERTIFICATE OF SERVICE

On April 8, 2015, a true and correct copy of this brief was served by EFC and U.S. certified-mail, return-receipt requested on Appellant's attorneys:

John Leslie
John Leslie│PLLC
1805 West Park Row Drive, Suite C
Arlington, Texas 76013

Yolonda Sewell
6731 Bridge Street, Suite 379
Fort Worth, Texas 76112

/s/ *Robert K. Wise*

, ACCEPTED
05-14-01392-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/24/2015 12:00:10 AM
LISA MATZ
CLERK

Appeal No. 05-14-01392-CV

---

In the Court of Appeals

Fifth Judicial District

Dallas, Texas

---

K.W. Ministries, Inc. v. Auction Credit Enterprises, LLC

---

## APPELLANT'S BRIEF

*ORAL ARGUMENT REQUESTED*

Yolonda Sewell
Attorney for Appellant
State Bar No. 24044111
6731 Bridge Street, Suite 379
Fort Worth, Texas 76112
Telephone: (806)239-2130
Facsimile: (817)531-9977
E-mail: yolonda_sewell@yahoo.com

John E. Leslie
State Bar No. 12231400
JOHN LESLIE | PLLC
1805 West Park Row Drive, Suite C
Arlington, Texas 76013
Telephone: (817) 505-1291
Facsimile: (817) 505-1292
Email: arlingtonlaw@aol.com

**EXHIBIT A**

*Identity of Parties and Counsel*

The following is a list of all parties and all counsel in this matter:

Appellant in this matter is K.W. Ministries, Inc. f/d/b/a C.R.U.S.H. Auto Sales, and

is Plaintiff in the underlying case described below. The attorneys representing Appellant

are:

| | |
|---|---|
| Yolonda Sewell | John Leslie |
| 6731 Bridge Street, Suite 379 | John Leslie PLLC |
| Fort Worth, Texas 76112 | 1805 W. Park Row Drive, Suite C |
| Tel: (806) 239-2130 | Arlington, Texas 76013 |
| Fax: (817) 531-9977 | Tel: (817) 505-1291 |
| | Fax: (817) 505-1292 |

Appellee in this matter is Auction Credit Enterprises, LLC, and is Defendant in the

underlying case described below. The attorneys representing Appellee are:

Robert Wise
Lillard Wise & Szygenda, PLLC
5949 Sherry Lane, Suite 1255
Dallas, Texas 75225
Tel: (214) 739-2005
Fax: (214) 739-2010

## Table of Contents

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    I.     The trial court erred when it failed to consider K.W. Ministries, Inc.'s amended response. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18, 19

    II.    The trial court erred in granting Auction Credit Enterprises, LLC's no-evidence motion for summary judgment when there is some evidence to support K.W. Ministries, Inc.'s claims. . . . . . . . . . . . . . . . . . . . . . . . .19, 20

    III.    The trial court erred in granting Auction Credit Enterprises, LLC's traditional motion for summary judgment when there is a genuine issue of material fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8, 9, 10, 11, 12, 13, 14, 15, 16

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16, 17

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

    I.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18

    II.    Amended Summary Judgment Response Disallowed . . . . . . . . . . . . . . .18, 19, 20

    III.    Some Evidence to Defeat No-Evidence Motion . . . . . . . . . . . . . . . . . . . 20, 21

    IV.    Genuine Issue Material Fact to Defeat Traditional Motion . . . . . . . . . . . . . .21, 22

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

2

**Appendix** ............................................................................23, 24, 25

  I.  Copy of Final Summary Judgment ............................................23

  II.  Text of Texas Rule of Civil Procedure 166a ........................23, 24, 25

  III. Text of Texas Civil Practice & Remedies Code §16.068 ....................25

  IV. Contract Between The Parties ................................................25

3

*Index of Authorities*

<u>Rules</u>

Texas Rule of Civil Procedure 166a ....................................................................17, 18

<u>Statutes</u>

Texas Civil Practice & Remedies Code §16.068 ...............................................19

<u>Cases</u>

*Austin v. Inet Technologies, Inc.*, 118 S.W.3d 491, 495 (Tex. App.—Dallas 2003).

............................................................................................16, 17, 21

*Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000)......................................16

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 ((Tex.1985).......16, 17

*Wayment v. Texas Kentworth Company*, 248 S.W.3d 883, 885 (Tex. App.—Dallas 2008)

(*citing* Tex.R.Civ.P. 166a(i) and *Western Inv., v. Urena*, 162 S.W.3d 547, 550 (Tex.

2005))....................................................................................17, 19

## Statement of the Case

1. The underlying suit arises out of Cause No. DC-13-14570, styled "K.W. Ministries, Inc. d/b/a C.R.U.S.H. Auto Sales v. Auction Credit Enterprises, LLC," in the 116th Judicial District Court, Dallas County, Texas.[1]

2. The underlying suit is an action for breach of contract, fraud, defamation, deceptive trade practices, and damages arising from a motor vehicle floorplan financing agreement.[2]

3. Appellee, Auction Credit Enterprises, LLC, filed a traditional and no-evidence motion for summary judgment.[3] Appellant filed an original and amended response.[4] The district court did not consider the amended response.[5]

4. The district court granted Appellee's motion for summary judgment.[6] This appeal ensued.[7]

## Issues Presented

I. The trial court erred when it failed to consider K.W. Ministries, Inc.'s amended summary judgment response.

    a. Texas Rule of Civil Procedure 166a applies

    b. The Relation-Back Doctrine applies

II. The trial court erred in granting Auction Credit Enterprises, LLC's no-

---

[1] C. R. at 5-65.
[2] Id.
[3] Id. at 69-406
[4] Id. at 407-424 and 483-522.
[5] R.R. at 29-36.
[6] C.R. at 600-01.
[7] Id. at 602-04.

5

evidence motion for summary judgment when there is some evidence to support K.W. Ministries, Inc.'s claims.

III.     The trial court erred in granting Auction Credit Enterprises, LLC's traditional motion for summary judgment when there is a genuine issue of material fact.

## *Statement of Facts*

In the summer of 2011, Plaintiff was engaged in the business of selling used vehicles to retail customers from a lot on Lancaster Street in Fort Worth, Texas under the assumed name "C.R.U.S.H. Auto Sales".[8]  Defendant was in the business of providing inventory financing to used car dealers, commonly referred to as "floorplan financing".[9]  In late July or early August 2011, Joe Madrid ("Madrid"), Defendant's Regional Manager, made a "cold call" on Plaintiff at its business premises to see if Plaintiff was interested in obtaining floor plan financing for its used car inventory.[10] Defendant, after one or more follow-up calls and meetings with Plaintiff, offered to extend "floor plan" financing to Plaintiff through its representative, Madrid.  Plaintiff accepted Defendant's offer.[11]

In furtherance of the "floor plan" lending arrangement, on August 11, 2011 Plaintiff, by and through Kenneth Williams ("Williams"), its President, signed a "Demand Promissory Note and Security Agreement" (the "Contract") at Defendant's office under the direction of Defendant's representative "Agnes."[12]  Although

---

[8] C.R. at 6.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

Williams' signature was notarized within the Contract, Madrid, the Notary Public who purportedly acknowledged Williams' signature to the Contract, was not present when Williams signed the Contract and Williams never saw Madrid affix his notary signature or stamp to the Contract.[13]  Neither Williams nor Plaintiff was given a copy of the Contract at the time it was signed, or at any time thereafter.[14]  After making demand on Defendant for a copy of the Contract, Plaintiff finally received a copy of the Contract on November 17, 2011, following Defendant's termination of its floorplan relationship with Plaintiff.[15]

At the time the Contract was entered into by Plaintiff, Plaintiff had no previous experience with floorplan financing arrangements, a fact communicated by Williams to Madrid.[16]  Defendant, being fully aware of Plaintiff's lack of knowledge of the details of floorplan financing and Plaintiff's inferior bargaining position, told Plaintiff that its physical possession of titles to vehicles Plaintiff owned outright, free and clear of liens, of an aggregate value of $75,000.00, together with a lien and security interest on all of Plaintiffs then-existing and after-acquired property, was necessary to initially secure the floorplan arrangement.[17]  In accordance with its demand, at the time the Contract was signed, Defendant took physical possession of titles to the following vehicles: a 2010 Cadillac SRX Luxury (VIN #3GYFNAEYIAS516971); a 2010 Toyota Camry LE (VIN#4T1 BF3EK5AUI00605); a 2008 Chrysler 300 (VIN

---

[13]*Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

7

#2C3LA53G08H303839); and a 2007 Cadillac CTS (VIN # IG6DP577670122419), promising to return the titles to Plaintiff on November 1, 2011 (collectively, the "Pledged Vehicles").[18]

During August, September and October, 2011, Plaintiff purchased a number of vehicles with the floorplan financing provided by Defendant and paid for these vehicles on a timely basis, without default, according to the terms of the Contract.[19] At the outset of their relationship, and at all times thereafter, Defendant instructed Plaintiff to make payment checks payable to "AAA" and not to Auction Credit Enterprises, LLC. Not knowing the reason or justification for this request, Plaintiff nonetheless complied with Defendant's instructions.

From time to time, Defendant requested post-dated checks from Plaintiff to pay for vehicles financed through Defendant which were contracted for sale, but not yet funded by the purchasers or their banks.[20] Defendant was instructed by Plaintiff to hold these checks until the sales were closed and the purchase price was received by Plaintiff.[21] Nonetheless, on two occasions Defendant deposited Plaintiff's payment check earlier than agreed upon, resulting in the checks being returned "NSF" by Plaintiff's bank.[22] In at least one instance, Defendant charged Plaintiff a $200.00 fee per returned check, even though Plaintiff's recollection was that the Contract provided

---

[18] *Id.* at 6-7.
[19] *Id.* at 7.
[20] *Id.*
[21] *Id.*
[22] *Id.*

for only a $50.00 returned check fee.[23] Plaintiff believed Defendant's demand for the higher NSF fee was in violation of the Contract's terms. However, Plaintiff paid the higher fee without question or complaint in order to preserve its then-cordial business relationship with Defendant.[24]

As November 1, 2011 approached, Plaintiff began to make inquiries of Defendant about the promised return of the titles to the Pledged Vehicles.[25] Defendant refused to return these titles to Plaintiff, even though Plaintiff was not in payment default under the Contract.[26] In order to assure Defendant of its fully (and actually, over) secured position under the Contract, Plaintiff attempted to pay for several vehicles in its inventory in advance of the payment date required under the Contract.[27] Defendant refused to accept Plaintiff's payment for these vehicles, accelerated all amounts due under the Contract, and demanded payment of the entire amount advanced to Plaintiff under the Contract, even though payments on specific vehicles were not yet due.[28] There was no outstanding uncured event of default under the Contract when this demand was made. On November 16, 2011, at approximately 3:45 p.m., Defendant, by and through its employees Madrid and Jesse Hidalgo, came to Plaintiff's car lot under the auspices of an "inventory check".[29] At that time, Defendant demanded possession of, and removed the following vehicles from Plaintiff's business

---

[23] *Id.* (*referencing* Contract §2.3(l)).
[24] *Id.* at 7.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

9

premises: a 2008 Chrysler 300 (VIN#2C3LA53G08H303839, one of the aforementioned "Pledged Vehicles"); a 2007 Kia Spectra (VIN #KNAFE121675453928); and a 2006 Nissan Maxima (VIN #IN4BA4IEX6C853039).[30]

On November 17, 2011, Defendant finally provided Plaintiff with a copy of the Contract. Over three (3) months had passed from the time the Contract was signed until Defendant finally gave Plaintiff a copy of the Contract.

On November 18, 2011, Defendant took possession of an additional vehicle owned by Plaintiff: a 2010 Cadillac SRX Luxury (VIN# 3GYFNAEYIAS516971, being the second of the "Pledged Vehicles").[31] This vehicle was seized at the Manheim Dallas - Fort Worth auction facility where it had been placed by Plaintiff for sale. On that same day, Defendant came to Plaintiff's business premises and attempted to take possession of a 2010 Toyota Camry LE (VIN #4TlBF3EK5AUI00605, the last remaining "Pledged Vehicle").[32] Defendant used a different vehicle to block the sole entry to Plaintiff's car lot, thereby preventing Plaintiff's customers and employees from entering or exiting Plaintiff's business premises while Defendant unsuccessfully attempted to seize the aforementioned Toyota Camry.[33] One of Plaintiff's salesmen suffered bodily injury as a result of Defendant's actions.[34]

On November 21, 2011, Defendant took possession of a 2006 Kia Sorento from

---

[30] *Id.* at 7-8.
[31] *Id.* at 8.
[32] *Id.*
[33] *Id.*
[34] *Id.*

10

a third-party repair facility and a 2004 Nissan Maxima from Plaintiff's business premises while the vehicle was being repaired.[35] At the time of repossession, Defendant's representatives were told that the 2004 Nissan Maxima was owned by, and titled to, a customer of Plaintiff who was paying for the vehicle under a retail installment contract. This fact was of no consequence to Defendant, who defiantly repossessed the vehicle. As a result of Defendant's actions, Plaintiff was forced to provide its customer with a replacement vehicle. Defendant did not return the Maxima for over three (3) months, finally surrendering the vehicle to Plaintiff in March 2012. By the time the Maxima had been returned to Plaintiff, Plaintiff had lost the opportunity to sell the loaned vehicle before the model year change, thereby being damaged by its loss of value.

After the wrongful repossessions of vehicles on November 21, 2011, Plaintiff that same day sent Defendant a letter detailing its position with respect to the actions taken by Defendant and requested that Defendant refrain from further interruption of Plaintiff's business.[36] On the following day, Plaintiff spoke with Defendant regarding its intent to pay Defendant all amounts properly due under the Contract. In response, Defendant requested that Plaintiff submit a written payment plan to Defendant by Friday, November 25, 2011.[37]

Prior to expiration of the November 25, 2011 deadline, the following described

---

[35] *Id.*
[36] *Id.*
[37] *Id.* at 8-9.

exchanges of correspondence occurred[38]:

On November 23, 2011, Plaintiff received a letter from Defendant notifying Plaintiff of its private disposition of collateral in satisfaction of Plaintiff's obligations to Defendant.

On November 23, 2011, Plaintiff responded to Defendant's notice of private disposition of collateral, seeking clarification of certain items prior to submitting its payment plan to Defendant.

On November 25, 2011, Plaintiff submitted its payment plan to Defendant.

On November 28, 2011, Defendant replied by demanding payment in full of all vehicles sold "out of trust" by December 2. 2011.

Between December 6-8, 2011, Plaintiff paid Defendant $36,670.00 in certified funds, representing over sixty percent (60%) of the total balance alleged to be due Defendant. On December 22, 2011, Plaintiff remitted another certified funds payment to Defendant in the amount of $8,300.00, bringing total payments to $44,970.00, approximately 80% of the total amount claimed as due by Defendant.[39]

On December 6, 2011, Plaintiff remitted certified funds to Defendant in payment for a 2005 Ford F-150, a 2004 Nissan Maxima, and a 2007 Kia Spectra.[40] At that time, Plaintiff also intended to remit payment for a 2007 Pontiac G5; however, since Defendant had not received title to the vehicle, Plaintiff's payment for the vehicle

---

[38] *Id.* at 9.
[39] *Id.*
[40]*Id.*

12

was not accepted by Defendant.[41] Accordingly, Plaintiff tendered payment for a 2007 Hyundai Elantra for which title had been received, using the check originally designated for the 2007 Pontiac G5.[42] The 2007 Hyundai Elantra had been recently sold to a customer of Plaintiff, and was in the customer's possession.[43] Defendant refused this tender of payment, stating that the cashier's check showed "2007 Pontiac G5." Plaintiff suggested striking through 2007 Pontiac G5, inserting 2007 Hyundai Elantra, and initialing the change in its capacity as remitter of the check.[44] Defendant continued to refuse tender of this check.

Plaintiff indicated that it would return the next day with a new, replacement check for the 2007 Hyundai Elantra.[45] *However, that same night, before Plaintiff could bring a replacement check to Defendant, Defendant repossessed the 2007 Hyundai Elantra from Plaintiff's customer's residence.*[46] The following day, Plaintiff tendered payment for the 2007 Hyundai Elantra, as originally promised, and paid the repossession fee to Defendant, even though repossession was unwarranted and wrongful, resulting in damages to Plaintiff, both for the repossession fee and in its business reputation with its customer.[47]

The following additional wrongful acts by Defendant occurred on the same day as the acts complained of in the immediately preceding paragraph. All of the acts of

---

[41] *Id.* at 9-10.
[42] *Id.* at 10.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*

Defendant on December 6, 2011 eventually led to the closure of Plaintiff's used car business. On December 6, 2011, Plaintiff discovered that Defendant had placed unnecessary and unjustified liens on the following vehicles: a 2007 Suzuki XL7; a 2007 Kia Spectra; a 2005 Ford F-150, and a 2004 Nissan Maxima. At the time these liens were placed on the vehicle titles, Defendant had actual physical possession of the titles and/or possession of the vehicles on which the liens were placed; therefore, recording liens on the titles was unnecessary. Thereafter, after these titles and the titled vehicles were returned to Plaintiff, Defendant knowingly executed invalid releases of lien on the same vehicles, as Madrid, Defendant's Branch Manager negligently and carelessly failed to write and sign his legal name on the titles in the manner required by the Texas Department of Motor Vehicles, thereby invalidating the releases and further damaging Plaintiff and its business reputation.[48]

On December 22, 2011 while making payment on a 2006 Nissan Maxima, Plaintiff was informed that Defendant charged additional repossession fees on the following vehicles: a 2004 Nissan Maxima; a 2006 Kia Sorento; a 2004 GMC Savana; a 2001 Nissan Altima; a 1997 Mitsubishi Montero Sport; a 2005 Ford F-150; and a 2007 Hyundai Elantra, increasing the remaining balance allegedly due Defendant under the Contract to $17,998.88.[49] Defendant confirmed this balance due by handing the written statement of its Chief Operating Officer, Tedd Martin to Plaintiff in a meeting on December 22, 2011. However, despite its reasonable and repeated

---

[48] *Id.*
[49] *Id.*

14

requests, Defendant never provided Plaintiff with a full accounting of the debt alleged to be due.[50] Defendant, in its pleadings, denies that it was obligated to provide Plaintiff with any accounting of the funds allegedly due Defendant.[51]

Defendant sold the 1997 Mitsubishi Montero Sport, 2001 Nissan Altima, 2004 GMC Savana, 2006 Kia Sorento, 2008 Chrysler 300, and 2010 Cadillac SRX which it had previously repossessed to satisfy the debt. [52]

On April 10, 2012, Plaintiff made demand on Defendant for damages under the Texas Deceptive Trade Practices Act, set forth in Tex. Bus. And Comm. Code section 17.41 et seq. ("DTPA").[53]

Defendant finally paid Plaintiff its over-collection on proceeds of collateral in early May, 2012, almost six (6) months after it terminated its loan relationship with Plaintiff, four and one half (4½) months from the date of its last meeting with Plaintiff and over three and one half (3 ½) months after its last sale of any vehicles.


### Summary of Argument

The trial court erred when it failed to consider K.W. Ministries, Inc.'s amended summary judgment response. The amended summary judgment response was timely pursuant to Texas Rule of Civil Procedure 166a and the relation back doctrine as articulated in Texas Civil Practice and Remedies Code §16.068. The amended response contains

---

[50] *Id.* at 10-11.
[51] C. R. at 69 *et seq.*
[52] C.R. at 11.
[53] *Id.*

15

evidence sufficient to defeat the no-evidence and traditional motions for summary judgment.

***Argument***

### I.    *Standard of Review*

A defendant moving for a traditional summary judgment must either (1) conclusively disprove at least one element of the plaintiff's theory of recovery; or (2) plead and conclusively establish each element of an affirmative defense.[54] When a defendant moves for summary judgment on an affirmative defense, it is the defendant's burden to conclusively establish the defense.[55] Once the movant establishes the right to summary judgment, the burden shifts to the non-movant to present the trial court with evidence of any issues that would preclude summary judgment.[56] A motion for summary judgment on traditional grounds is subject to de novo review.[57] In reviewing a motion for summary judgment, the appellate court must determine if any genuine issue of material fact exists to defeat the motion.[58] Evidence favoring the non-movant is taken as true and all reasonable inferences must be resolved in favor of the non-moving party.[59]

In a no-evidence summary judgment motion, the movant asserts there is no evidence of one or more elements upon which an adverse party has the burden of proof at

---

[54] *Austin v. Inet Technologies, Inc.*, 118 S.W.3d 491, 495 (Tex. App.–Dallas 2003).

[55] *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000).
[56] *Austin*, 118 S.W.3d at 495.
[57] *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).
[58] *Id.*
[59] *Id.*

16

trial.[60] To defeat a no-evidence summary judgment motion, the non-moving party must point out evidence that raises a fact issue on the challenged elements.[61] Like a motion for traditional summary judgment, the standard of review for a no-evidence summary judgment is de novo. The reviewing court must construe the record in the light most favorable to the non-movant while disregarding all contrary evidence and inferences. [62]

## II.     *Amended Summary Judgment Response Disallowed*

### The trial court erred when it failed to consider K.W. Ministries, Inc.'s amended response.

The trial court erred when it failed to consider K.W. Ministries, Inc.'s amended response in deciding Auction Credit LLC's amended traditional and no-evidence motion for summary judgment. Auction Credit LLC filed its amended traditional and no-evidence motion for summary judgment on August 25, 2014.[63] Pursuant to Texas Rule of Civil Procedure 166a, K.W. Ministries, Inc.'s response was due on or before September 8, 2015.[64] K.W. Ministries, Inc. filed a response to the motion on said date.[65] Additionally, K.W. Ministries, Inc. filed an amended response the morning of, but prior to the summary judgment hearing.[66] The trial court declined to consider the amended response and the factual and legal evidence contained within the response.[67]

Texas Rule of Civil Procedure 166a(c) states

---

[60] *Wayment v. Texas Kentworth Company*, 248 S.W.3d 883, 885 (Tex. App.—Dallas 2008) (*citing* Tex.R.Civ.P. 166a(i) and *Western Inv., v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)).
[61] *Austin*, 118 S.W.3d at 495.
[62] *Id.*
[63] *See generally* C.R. at 69-127.
[64] Tex. R. Civ. Pro. 166a(c) (2014).
[65] C.R. at 407-24.
[66] *See generally* C.R. at 483-522.
[67] R.R. at 29-30, 36-37.

The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, *on file at the time of the hearing*, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.[68]

In the instant case, the amended response was on file at the time of the hearing, but the trial court failed to consider the amended response.[69] The amended response was sufficient to raise a genuine issue of material fact to defeat the traditional motion for summary judgment.[70] Likewise, the amended response proffered more than a scintilla of probative evidence as necessary to defeat the no-evidence motion for summary judgment.[71] Consequently, the court erred in failing to consider the amended response prior to rendering a decision on Auction Credit LLC's motion and in granting the summary judgment.

The trial court also erred in failing to consider the amended summary judgment response when the relation back doctrine applies. The trial court indicated that the deadline to file a response was September 8, 2015. As such, the trial court found that K.W. Ministries, Inc.'s amended response was untimely.[72] However, the relation back doctrine applies. The relation-back doctrine states that an amendment of a timely-filed pleading is timely unless the amendment is "wholly based on a new, distinct, or different

---

[68] Tex. R. Civ. Pro. 166a(c) (2014) (emphasis added).
[69] R.R. at 29-30, 36-37.
[70] *See generally* C.R. at 483-522.
[71] *Id.*
[72] R.R. at 36-37.

18

transaction or occurrence."[73] In this case, the amended response was based on the same case, the same parties, the same contract, the same facts, and the same circumstances. Therefore, the amended response should be deemed the same transaction or occurrence and found to be timely in accordance with the relation-back doctrine. The trial court erred in deeming the amended response untimely and failing to consider the contents of the same.

### III.    Some Evidence to Defeat No-Evidence Motion

<u>**The trial court erred in granting Auction Credit Enterprises, LLC's no-evidence motion for summary judgment when there is some evidence to support K.W. Ministries, Inc.'s claims.**</u>

The trial court erred in granting Auction Credit Enterprises, LLC's no-evidence motion for summary judgment because there exists some evidence to support K.W. Ministries, Inc.'s claims. In order to prevail on a no-evidence summary judgment motion, the movant must show that there is no evidence of one or more elements upon which an adverse party has the burden of proof at trial.[74] On the contrary, to defeat a no-evidence summary judgment motion, the non-moving party must point out evidence that raises a fact issue on the challenged elements.

Auction Credit Enterprises, LLC did not meet its burden. For example, on the breach of contract claim, K.W. Ministries, Inc. offered evidence to show that Auction Credit Enterprises, LLC breached the agreement by charging excessive insufficient fund

---

[73] Tex. Civ. Prac & Rem. Code §16.068 (2014).
[74] *Wayment*, 248 S.W.3d at 885.

19

fees,[75] by requiring certified funds,[76] by declining curtailments or extensions,[77] by repossessing vehicles under retail installment contract,[78] by charging for multiple lot checks,[79] by selling collateral for less than commercially reasonable values,[80] by failing to proceed against the bond,[81] by failing to timely return excess proceeds,[82] and by failing to provide an accounting.[83] Similarly, K.W. Ministries, Inc. provided evidence that Auction Credit Enterprises, LLC was not entitled to a qualified privilege on the defamation claim.[84] Further, K.W. Ministries, Inc. introduced evidence of Auction Credit Enterprises, LLC's unconscionable actions as it relates to the Texas Deceptive Trade Practices Act claim.[85] The facts and law outlined in the amended response amount to more than a scintilla of probative evidence necessary to defeat the no-evidence motion for summary judgment.[86] Therefore, the trial court erred by granting the motion for summary judgment.

### IV. *Genuine Issue of Material Fact to Defeat Traditional Motion*

**The trial court erred in granting Auction Credit Enterprises, LLC's traditional motion for summary judgment when there is a genuine issue of material fact.**

The trial court erred in granting the amended traditional motion for summary

---

[75] R.R. at 509-10.
[76] *Id.* at 510-11.
[77] *Id.* at 511-12.
[78] *Id.* at 512-15.
[79] *Id.* at 515.
[80] *Id.* at 515-16.
[81] *Id.* at 516-17.
[82] *Id.* at 517.
[83] *Id.* at 518-19.
[84] *Id.* at 492-97.
[85] *Id.* at 506-07.
[86] *See generally id.* at 483-522.

judgment because there exists a genuine issue of material fact to defeat the motion. To be successful on a traditional motion for summary judgment, the moving party must prove there exists no genuine issue of material fact.[87] As stated in argument section three, the amended response brings to light both genuine issues of material fact as well as defeats the affirmative defense claimed by Auction Credit Enterprises, LLC.[88] Namely, Auction Credit Enterprises, LLC charged excessive insufficient fund fees, was not legally entitled to a claim of qualified privilege, and committed unconscionable actions as articulated in mandatory precedent.[89] The trial court erred by granting the motion in light of the evidence in the amended response.

*Prayer*

K.W. Ministries, Inc. prays that this Court find that the trial court erred by disallowing the amended response and granting the motion for summary judgment when more than a scintilla of probative evidence exists.

---

[87] *Austin*, 118 S.W.3d at 495.
[88] *See generally* R.R. at 483-522.
[89] *See* notes 22-32.

Respectfully submitted,

By: /s/Yolonda Sewell
Yolonda Sewell
Texas Bar No. 24044111
6731 Bridge Street, Suite 379
Fort Worth, Texas 76112
Tel. (806) 239-2130
Fax. (817) 531-9977
E-mail yolonda_sewell@yahoo.com
Attorney for Appellant
K.W. Ministries, Inc. dba CRUSH Auto Sales

## CERTIFICATE OF SERVICE

I certify that, on February 21, 2015, I served a copy of Appellant's Brief by electronic service on Robert K. Wise at bwise@lwsattorneys.com. I further certify that a copy of this corrected brief was served on Robert K. Wise, appellee's counsel, by electronic service at bwise@lwsattorneys.com on March 23, 2015.

/s/Yolonda Sewell

Yolonda Sewell

22

*Appendix*

I.   Copy of Final Summary Judgment

II.  Text of Texas Rule of Civil Procedure 166a

III. Text of Civil Practice and Remedies Code §16.068

IV.  Contract Between The Parties